557 S.E.2d 820

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Robin LADD, Defendant Below, Appellant.**

No. 28853.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 2, 2001.

Decided Dec. 11, 2001.

Rebecca L. Stafford, Esq., Prosecuting Attorney, Ripley, West Virginia, Attorney for Plaintiff Below, Appellee.

Harry G. Deitzler, Esq., Hill, Peterson, Carper, Bee & Deitzler, Charleston, West Virginia, Attorney for Defendant Below, Appellant.

MAYNARD, Justice:

The defendant, Robin Ladd, appeals her convictions in the Circuit Court of Jackson County of first degree murder and two counts of conspiracy to commit murder. She was sentenced to life in the penitentiary without mercy for the murder conviction and two consecutive indeterminate terms of one to five years for the conspiracy convictions. After careful consideration of the issues, we reverse and remand.

## I.

### STATEMENT OF FACTS

On October 20, 1998, Richard Ladd was murdered in his home in Jackson County,

West Virginia. Oliver "Buddy" Jarrell and Jill Hodge were hiding in the Ladd residence when Richard Ladd arrived home from work. Jarrell shot Ladd once in the chest with a 30–caliber rifle.

Buddy Jarrell was subsequently convicted of first degree murder and conspiracy to commit murder for the death of Richard Ladd. Jill Hodge pled guilty to second degree murder, and Charlie Hodge, Jill's father, pled guilty to voluntary manslaughter. Robin Ladd, Richard Ladd's wife, defendant below and appellant herein, was charged, in the first count of the indictment, with first-degree murder. The second count of the indictment alleged an agreement between the defendant, Charlie Hodge, Jill Hodge, and Buddy Jarrell to kill Richard Ladd. The third count alleged an agreement for the same purpose between the defendant and Allen Mitchell, an acquaintance of the defendant.

The defendant's trial occurred over several days in March 2000. The State's theory of the case was that the defendant and Charlie Hodge were lovers who planned to kill Richard Ladd so that the defendant would acquire her husband's farm and life insurance proceeds which amounted to in excess of $800,000.00. To carry out the plan, the defendant and Charlie Hodge allegedly hired Charlie Hodge's daughter, Jill, and her friend Buddy Jarrell, for $5000.00 each. The defendant, her two children, Anna, nine years of age, and Matthew, fourteen years of age, and Charlie Hodge were in Parkersburg watching a movie when the murder occurred. Charlie Hodge discovered Richard Ladd's body when he, the defendant, and the children arrived back at the Ladd residence late that evening.

In order to prove the first two counts of the indictment, first degree murder and the agreement with the Hodges and Jarrell, the State presented the testimony of Charlie Hodge and Jill Hodge who claimed that the defendant participated with them in the plan to kill her husband. Beth Burgess, Jill Hodge's paramour, testified that she witnessed a conversation between the defendant, Charlie Hodge, and Jill Hodge, in which they discussed killing Richard Ladd.

Allen Mitchell was not a witness at the defendant's trial. Instead, the State was permitted to introduce a written statement that Mitchell gave to law enforcement officers, to present the in court testimony of these officers as to the contents of Mitchell's statement, and to play the audiotape interview in which Mitchell gave his statement. Mitchell's statement indicated that he and the defendant had been involved in a sexual relationship and that they had devised several plans to kill the defendant's husband. The State also produced a homemade silencer seized from Mitchell's residence and test results indicating that marks on the silencer matched those found on a bench vice located on the Ladd farm. Finally, the State introduced an out-of-court statement of Linda Ankeney, Allen Mitchell's first cousin, in which Ankeney stated that Mitchell disclosed to her his and the defendant's plans to kill Richard Ladd.

The defendant testified and denied any involvement in her husband's murder. Specifically, she characterized her relationship with Charlie Hodge as that of "father-daughter." She admitted a brief sexual relationship with Allen Mitchell, but denied that they planned to kill her husband.

At the close of the evidence, the jury found the defendant guilty of the first degree murder of Richard Ladd, as alleged in the first count of the indictment, conspiracy to commit the felony offense of murder with Charlie Hodge, Jill Hodge, and Buddy Jarrell, as alleged in the second count of the indictment, and conspiracy to commit the felony offense of murder with Allen Mitchell, as alleged in the third count of the indictment. By order of April 3, 2000, the trial court denied the defendant's motion for acquittal and for a new trial, and sentenced the defendant to life in the penitentiary, without mercy, on the murder conviction, and two consecutive terms of one to five years on the conspiracy convictions. The defendant now appeals to this Court.

## II.

## DISCUSSION

### A. *Sufficiency of the Evidence*

■ First, we address the defendant's claim that the evidence was insufficient to support the verdict on count one of the indictment, first-degree murder, and on count two of the indictment, conspiracy to commit the felony offense of murder with the Hodges and Jarrell.[1] To support her argument, the defendant points to the fact that Buddy Jarrell's statement does not implicate the defendant in the murder of Richard Ladd.[2] Also, the defendant argues that Charlie Hodge and Jill Hodge implicated the defendant only after receiving plea bargains. Finally, the defendant asserts that the trial testimony of these two alleged co-conspirators was contradictory. The State counters that the verdict was supported by overwhelming evidence because a rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

■ Regarding challenges to the sufficiency of evidence to support a verdict, this Court has said:

The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syllabus Point 1, *State v. Guthrie,* 194 W.Va. 657, 461 S.E.2d 163 (1995). Further,

[a] criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.

Syllabus Point 3, *id.*

■ First-degree murder is a "willful, deliberate and premeditated killing." W.Va. Code § 61–2–1 (1991). Evidence at trial indicated that Buddy Jarrell willfully, deliberately, and premeditatedly killed Richard Ladd. Our law says that "every accessory before the fact[ ] shall be punish[ed] as if he were the principal in the first degree[.]" W.Va.Code § 61–11–6 (1923). This Court has stated:

Where a defendant is convicted of a particular substantive offense, the test of the sufficiency of the evidence to support the conviction necessarily involves consideration of the traditional distinctions between parties to offenses. Thus, a person may be convicted of a crime so long as the

---

1. The defendant also contends that the evidence was insufficient to support count three of the indictment which was the alleged conspiracy between the defendant and Allen Mitchell. In her brief to this Court, the defendant's entire argument on this issue is that "[d]efendant moved the court to set aside the jury's verdict as to count three of the indictment because there was insufficient evidence of any agreement between the alleged co-conspirators to commit murder. The trial court overruled and denied the defendant's motion." We have said many times that "[a] skeletal argument, really nothing more than an

assertion, does not preserve a claim.... Judges are not like pigs, hunting for truffles buried in briefs." *State, Dept. of Health v. Robert Morris N.,* 195 W.Va. 759, 765, 466 S.E.2d 827, 833 (1995), *quoting United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir.1991) (citations omitted). The defendant's mere assertion, without supporting case law, is inadequate to preserve the assignment of error.

2. Buddy Jarrell did not testify at the defendant's trial.

evidence demonstrates that he acted as an accessory before the fact, as a principal in the second degree, or as a principal in the first degree in the commission of such offense.

Syllabus Point 8, *State v. Fortner*, 182 W.Va. 345, 387 S.E.2d 812 (1989). Therefore, a person found to be an accessory before the fact to a first degree murder may be convicted of first degree murder.

An accessory before the fact is a person who being absent at the time and place of the crime, procures, counsels, commands, incites, assists or abets another person to commit the crime, and absence at the time and place of the crime is an essential element of the status of an accessory before the fact.

Syllabus Point 2, *State ex rel. Brown v. Thompson*, 149 W.Va. 649, 142 S.E.2d 711 (1965), *overruled in part on other grounds by State v. Petry*, 166 W.Va. 153, 273 S.E.2d 346 (1980).

 Charlie Hodge and Jill Hodge testified that the defendant asked Charlie Hodge to find someone to kill her husband, and that Charlie Hodge approached Jill Hodge with this request. As a result, Jill Hodge procured Buddy Jarrell to perform the killing. In return for the killing, the defendant offered to pay money to Jill Hodge and Buddy Jarrell. The Hodges further testified that the defendant discussed the proposed killing on several occasions and helped plan it. Finally, the evidence indicated that the defendant was not present during the killing, but was in Parkersburg watching a movie. We believe that a rational trier of fact could have found from this evidence the essential elements of accessory before the fact to first degree murder which, as stated above, permits the defendant to be found guilty of first degree murder.

 Concerning the conspiracy conviction in count two, we have held:

In order for the State to prove a conspiracy under *W.Va.Code*, 61–10–31(1), it must show that the defendant agreed with others to commit an offense against the State and that some overt act was taken by a member of the conspiracy to effect the object of that conspiracy.

Syllabus Point 4, *State v. Less*, 170 W.Va. 259, 294 S.E.2d 62 (1981). The testimony of Charlie Hodge, Jill Hodge, and Beth Burgess indicated that the defendant agreed with Charlie Hodge, Jill Hodge, and Buddy Jarrell to kill Richard Ladd. The evidence also indicated that several overt acts [3] were taken to effect the killing of Mr. Ladd and that, in fact, Mr. Ladd was killed as a result of the agreement. Accordingly, we find that a rational trier of fact could find from this evidence the essential elements of a conspiracy, of which the defendant was a part, to murder Richard Ladd.

The defendant contends, however, that the testimony of Charlie Hodge and Jill Hodge is not credible because they both received plea bargains and their testimony was contradictory. We do not believe that these facts alone render their testimony insufficient to support the verdict as a matter of law. The plea bargains were revealed to the jury, and defense counsel cross-examined Charlie Hodge and Jill Hodge at length and brought out the discrepancies in their testimony. Our rule says that credibility determinations are for the jury and not an appellate court. *See* Syllabus Point 3, *State v. Guthrie, supra.* The jury obviously viewed all of the testimony and evidence and chose to believe the testimony of Charlie Hodge and Jill Hodge over that of the defendant. Accordingly, we find that the defendant's assignment of error based on insufficiency of the evidence is meritless.

*B. Admission of Out–of–Court Statements*

The defendant next alleges that the trial court committed reversible error in admit-

**3.** For example, there was evidence that Jill Hodge and Buddy Jarrell traveled to the "Park & Ride" in Jackson County where they were transported by Charlie Hodge to the Ladd residence. There they took guns from the residence and hid them under hay in the barn. Jill Hodge and Buddy Jarrell then entered the residence to await Richard Ladd's arrival, and ransacked the home to attempt to make the murder look like a burglary gone awry. At the same time, Charlie Hodge met the defendant and the two of them took the defendant's children to Parkersburg in order to provide Hodge and the defendant with an alibi for Richard Ladd's murder.

ting the out-of-court statements of Allen Mitchell and Linda Ankeney in violation of the Confrontation Clause. Mitchell and Ankeney were found to be unavailable during the defendant's trial due to the fact that their respective attorneys were either State legislators or employees of the Legislature and were exempt, along with their clients, under W.Va.Code § 4–1–17 (1997) from appearing at trial because the timing of the trial conflicted with the business of the Legislature.[4] During oral argument before this Court, the State confessed that the admission of Mitchell's and Ankeney's out-of-court statements constituted plain error and, because this was the only evidence supporting the defendant's conspiracy with Mitchell, the defendant's conviction on the third count of the indictment must be reversed.

 This Court has held:

Generally, out-of-court statements made by someone other than the declarant while testifying are not admissible unless: 1) the statement is not being offered for the truth of the matter asserted, but for some other purpose such as motive, intent, state-of-mind, identification or reasonableness of the party's action; 2) the statement is not hearsay under the rules; or 3) the statement is hearsay but falls within an exception provided for in the rules.

Syllabus Point 1, *State v. Maynard*, 183 W.Va. 1, 393 S.E.2d 221 (1990). Clearly, Mitchell's and Ankeney's statements were offered for the truth of what was asserted which was that Mitchell and the defendant conspired to kill the defendant's husband. The statements were not exempt from being hearsay under Rule 801(d) because they were not the prior statements of witnesses at trial and they were not admissions of party-opponents.[5] Therefore, Mitchell's and Ankeney's out-of-court statements are hearsay. As a basis for admitting the statements, the trial court ruled that they fall under the "statement against interest" hearsay exception found in Rule 804(b)(3) of the West Virginia Rules of Evidence.

 We have previously recognized that the admission of hearsay statements as direct and substantive evidence presents the additional problem of conflicting with the defendant's constitutional guarantee of confronting adverse witnesses. *See State v. Mason*, 194 W.Va. 221, 460 S.E.2d 36 (1995). Concerning the importance of the confrontation clause and its purpose, this Court has explained:

The mission of the Confrontation Clause found in the Sixth Amendment to the United States Constitution and Section 14 of Article III of the West Virginia Constitution is to advance a practical concern for the accuracy of the truth-determining process in criminal trials, and the touchstone is whether there has been a satisfactory basis for evaluating the truth of the prior statement. An essential purpose of the Confrontation Clause is to ensure an opportunity for cross-examination. In exercising this right, an accused may cross-examine a witness to reveal possible biases, prejudices, or motives.

Syllabus Point 1, *State v. Mason*, 194 W.Va. 221, 460 S.E.2d 36 (1995). Initially, we held that "[t]he two central requirements for admission of extrajudicial testimony under the Confrontation Clause contained in the Sixth

---

4. According to W.Va.Code § 4–1–17(a):

In accordance with the constitutional separation of powers and principles of comity, it is the purpose of this section to provide that members of the Legislature and certain designated legislative employees are not required to attend to matters pending before tribunals of the executive and judicial branches of government when the timing of those matters may present conflicts with the discharge of the public duties and responsibilities that are incumbent upon members or employees of the Legislature. During legislative sessions or meetings and for reasonable time periods before and after, the judicial and executive branches should refrain from requiring the personal presence and attention of a legislator or designated employee who is engaged in conducting the business of the Legislature.

W.Va.Code § 4–1–17(g) makes this section applicable to the clients of legislators.

5. Rule of Evidence 801(d)(2)(E) provides that an admission of a party-opponent is not hearsay when the statement is offered by a co-conspirator of a party during the course of and in furtherance of the conspiracy. This rule is not applicable here because Mitchell's statement constituted a confession and was not made for the purpose of furthering the conspiracy.

427

Amendment to the United States Constitution are: (1) demonstrating the unavailability of the witness to testify; and (2) proving the reliability of the witness's out-of-court statement." Syllabus Point 2, *State v. James Edward S.*, 184 W.Va. 408, 400 S.E.2d 843 (1990). Recently, this holding was amended.

> We modify our holding in *James Edward S.*, 184 W.Va. 408, 400 S.E.2d 843 (1990), to comply with the United States Supreme Court's subsequent pronouncements regarding the application of its decision in *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), to hold that the unavailability prong of the Confrontation Clause inquiry required by syllabus point one of *James Edward S.* is only invoked when the challenged extrajudicial statements were made in a prior judicial proceeding.

Syllabus Point 2, *State v. Kennedy*, 205 W.Va. 224, 517 S.E.2d 457 (1999). Because Mitchell's and Ankeney's out-of-court statements were not made in a prior judicial proceeding, Syllabus Point 1 of *James Edward S.* is not invoked, and the State had to prove only the reliability of the statements. "[T]he Confrontation Clause contained in the Sixth Amendment to the United States Constitution mandates the exclusion of evidence that does not bear adequate indicia of reliability. Reliability can usually be inferred where the evidence falls within a firmly rooted hearsay exception." Syllabus Point 5, in part, *James Edward S.*

 This Court has strongly intimated that Rule 804(b)(3) is not a firmly rooted hearsay exception. *See State v. Mason*, 194 W.Va. 221, 460 S.E.2d 36 (1995).[6] We have also said that an independent inquiry into the reliability of out-of-court statements is required for the admission of statements under Rule 804(b)(3).

> When ruling upon the admission of a narrative under Rule 804(b)(3) of the West Virginia Rules of Evidence, a trial court must break the narrative down and determine the separate admissibility of each single declaration or remark. This

exercise is a fact-intensive inquiry that requires careful examination of all the circumstances surrounding the criminal activity involved.

Syllabus Point 7, *State v. Mason*, 194 W.Va. 221, 460 S.E.2d 36 (1995). Further,

> To satisfy the admissibility requirements under Rule 804(b)(3) of the West Virginia Rules of Evidence, a trial court must determine: (a) The existence of each separate statement in the narrative; (b) whether each statement was against the penal interest of the declarant; (c) whether corroborating circumstances exist indicating the trustworthiness of the statement; and (d) whether the declarant is unavailable.

Syllabus Point 8, *State v. Mason*. Concerning whether the Confrontation Clause prohibits the admission of an out-of-court statement, we have opined:

> Absent a showing of particularized guarantees of trustworthiness, the admission of a third-party confession implicating a defendant violates the Confrontation Clause found in the Sixth Amendment to the United States Constitution and Section 14 of Article III of the West Virginia Constitution. The burden is squarely upon the prosecution to establish the challenged evidence is so trustworthy that adversarial testing would add little to its reliability. Furthermore, unless an affirmative reason arising from the circumstances in which the statement was made provides a basis for rebutting the presumption that a hearsay statement is not worthy of reliance at trial, the Confrontation Clause requires exclusion of the out-of-court statement.

Syllabus Point 9, *State v. Mason*.

 It cannot be said that Mitchell's and Ankeney's statements fall within a firmly rooted hearsay exception. Further, the record indicates that the statements were not broken down into separate declarations, and a determination was not made that corroborating circumstances existed indicating the trustworthiness of each declaration as is required prior to admitting statements under

---

**6.** In *State v. Mason*, 194 W.Va. at 231, 460 S.E.2d at 46, we directed the trial court to evaluate the out-of-court statements "as if we have

decided that Rule 804(b)(3) is not a 'firmly rooted exception.'"

Rule 804(b)(3). Finally, there were no showings of particularized guarantees of trustworthiness as required by the Confrontation Clause. Accordingly, we find that the circuit court erred in admitting the out-of-court statements of Mitchell and Ankeney.

■■■ This Court has previously stated:

Only two reasons keep us from reversing when the Confrontation Clause is violated. First, testimony admitted over a defendant's valid Confrontation Clause objection is subject to a harmless error analysis. . . .

Second, if a defendant fails to object to the admission of evidence in violation of his Confrontation Clause rights, it is ground for reversal only if it constitutes plain error. "Plain error warrants reversal 'solely in those circumstances in which a miscarriage of justice would otherwise result.'" *State v. Miller,* 194 W.Va. 3, 18, 459 S.E.2d 114, 129 (1995), *quoting United States v. Frady,* 456 U.S. 152, 163 n. 14, 102 S.Ct. 1584, 1592 n. 14, 71 L.Ed.2d 816, 827 n. 14 (1982).

*State v. Mason,* 194 W.Va. at 227 n. 6, 460 S.E.2d at 42 n. 6 (citations omitted). The defendant asserts that her counsel made a valid Confrontation Clause objection to the admission of Mitchell's and Ankeney's out-of-court statements. The State disagrees, and asserts that while defense counsel objected on hearsay grounds, he failed to invoke the Confrontation Clause.

The defendant, in her brief, cites several specific portions of the record in which her counsel allegedly made valid Confrontation Clause objections to Mitchell's out-of-court statement. At one point defense counsel objected because "[t]he state intends to introduce evidence in the form of a hearsay statement from [Mitchell]." Defense counsel characterized his motion in opposition to the admission of the statement as either a motion for a continuance "or a motion to exclude any hearsay declarations from Allen Mitchell alternatively." He further commented, "I don't mind if they proceed to trial as long as they don't introduce any hearsay from this witness, because I can't call the witness and they can't call the witness." Again, "I do preserve my objection to all hearsay related

to statements made by Allen Mitchell, and the documents contain hearsay." Further, "that's why I made my motion for continuance so we could have the witnesses here, Judge." In addition, "I had previously objected to the admission of hearsay statements from Allen Mitchell, and I'd like to preserve that objection, but I don't want to keep renewing it in front of the jury." At another point, defense counsel remarked, "I think she's going to ask about statements of Mitchell which is okay if when [sic] she establishes he is not available. They haven't yet put him on the stand to say he's not available." Later, defense counsel defended remarks he made during his closing argument in regards to the unavailability of Mitchell and Ankeney by saying, "It was occasioned. We did everything we could to get them here. We asked for a continuance."

After reviewing the above objections, this Court agrees with the State that defense counsel failed to make a valid Confrontation Clause objection to the introductions of Mitchell's statement. Rather, counsel objected on the basis that Mitchell's out-of-court statement cannot be admitted under Rule 804(b)(3) unless the State proves Mitchell's unavailability to testify. Objections to evidence based on hearsay, however, are simply not the same as objections based on the Confrontation Clause. Defense counsel failed to alert the trial court that the admission of Mitchell's statement as evidence of a conspiracy involving the defendant implicated the Confrontation Clause and required, prior to their admission, an additional showing that the statement was reliable.

■■■ Time and again, we have reiterated that "[t]o preserve an issue for appellate review, a party must articulate it with such sufficient distinctiveness to alert a circuit court to the nature of the claimed defect." Syllabus Point 2, *State ex rel. Cooper v. Caperton,* 196 W.Va. 208, 470 S.E.2d 162 (1996). We have further explained:

The rule in West Virginia is that parties must speak clearly in the circuit court, on pain that, if they forget their lines, they will likely be bound forever to hold their peace. . . . It must be emphasized that the

contours for appeal are shaped at the circuit court level by setting forth with particularity and at the appropriate time the legal ground upon which the parties intend to rely.

*Id.*, 196 W.Va. at 216, 470 S.E.2d at 170 (citation omitted). Trial courts should not have to guess the nature of claimed defects. Further, this Court should not have to examine with a fine tooth comb the lines of trial transcripts to discern the true meaning of objections made at trial. If defense counsel meant to make a Confrontation Clause objection below, he should have done so instead of making a hearsay objection.[7]

■■■ In light of defense counsel's failure to make a valid Confrontation Clause objection to the admission of Allen Mitchell's out-of-court statement, we will only reverse the defendant's conviction of conspiring with Mitchell to commit murder if the statement's admission constituted plain error that was prejudicial to the defendant. "To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syllabus Point 7, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995).

■■■ The State has conceded that the introduction of the out-of-court Mitchell statement was plain error. "Plain" is synonymous with "clear." *State v. Miller*, 194 W.Va. at 18, 459 S.E.2d at 129. The introduction of Mitchell's out-of-court statement clearly violated the defendant's right to confront witnesses against her. Further, this clear error affected the defendant's substantial rights because it affected rights guaranteed by the Confrontation Clause of the

Federal and State Constitutions. Our final inquiry on this issue is whether the plain error "seriously affects the fairness, integrity, or public reputation of the judicial proceedings."

Assuming that an error is "plain," the inquiry must proceed to its last step and a determination made as to whether it affects the substantial rights of the defendant. To affect substantial rights means the error was prejudicial. It must have affected the outcome of the proceedings in the circuit court, and the defendant rather than the prosecutor bears the burden of persuasion with respect to prejudice.

Syllabus Point 9, *id.* Therefore, the dispositive issue is whether the inadmissible evidence was prejudicial to the defendant or affected the outcome of the trial on the third count of the indictment.

As noted above, the State confessed that the admission of Mitchell's and Ankeney's out-of-court statements constituted plain error and, because this was the only evidence supporting the defendant's conviction of conspiring with Mitchell, the State conceded that the defendant's conviction on the third count of the indictment must be reversed. We agree with the State. Accordingly, we reverse the defendant's conviction on count three of the indictment.

### C. Legislative Immunity

■■■ Prior to addressing the next issue, we note that this Court finds it regrettable that improper evidence was admitted in the trial below due to the fact that the lawyers of two prospective witnesses were, at the time of trial, conducting legislative business and thus exempt from appearing at trial under W.Va.Code § 4–1–17. In order to pro-

---

7. While defense counsel failed to make a valid Confrontation Clause objection to the introduction of Allen Mitchell's statement, we believe that he did make a valid Confrontation Clause objection to the introduction of Linda Ankeney's statement. The record reflects that in response to the State's introduction of Ankeney's out-of-court statement, defense counsel stated, "[t]hey're trying to offer it as a statement against Robin Ladd, and we have a right to cross examine her." Again, defense counsel asserted, "[t]here's a balancing test on that, Judge. We have a right to cross examine. My goodness." As noted above,

an essential purpose of the Confrontation Clause is to ensure an opportunity for cross-examination. Although a valid Confrontation Clause objection certainly could be stated in more detail, we believe that defense counsel said enough to alert the trial court to the nature of the problem. Accordingly, the admission of Linda Ankeney's out-of-court statement over the defendant's Confrontation Clause objection would be subject to a harmless error analysis. However, because we reverse on other grounds, such an analysis is unnecessary.

vide guidance to trial courts in the future, we hold that generally, in criminal trials, trial courts should exercise the utmost caution prior to admitting hearsay testimony pursuant to Rule 804 of the West Virginia Rules of Evidence when the declarant's unavailability under that rule is due to the fact that his or her lawyer is a State legislator or designated employee of the Legislature, the Legislature is then in regular session, and the legislator or designated employee of the Legislature is exempt from attending to matters pending before tribunals pursuant to W.Va.Code § 4–1–17. Trial courts should make every reasonable accommodation, including modification of the trial schedule, to ensure the availability at trial of the lawyer and his client who is a prospective witness. Judges must be mindful of the important duties and responsibilities of members of the Legislature and endeavor to make schedules which are practical and reasonable and which allow legislators to both attend to court duties and serve in the Legislature.

■ This Court further believes that a lawyer who is a legislator or designated employee of the Legislature must share in this duty of reasonable accommodation. W.Va. Code § 4–1–17 is a very broadly worded statute that exempts legislators and designated legislative employees from attendance at tribunals not only during regular sessions of the Legislature but also for the ten-day time period immediately before any regular or extraordinary session; the thirty-day time period immediately following the adjournment sine die of any regular or extraordinary session; the four-day time period before any interim meetings of any committee of the Legislature or before any party caucus; the time period during any interim meetings of the Legislature or any party caucus; or the four-day time period following the conclusion of any interim meetings of any committee of the Legislature or party caucus. Thus, a lawyer who is a legislator or a designated employee of the legislator could be exempt from attendance at trials for potentially substantial amounts of time resulting in significant disruption to the justice system as well as great inconvenience to a large number of people. W. Va.Code § 4–1–17(f) provides that a member or a designated employee of

the Legislature may waive his or her exemption and make an appearance or attend to a matter that would otherwise be stayed. As officers of the court, lawyers who are legislators or designated employees of the Legislature should be mindful of their duty both to their clients and the court, and strive to accommodate the needs of trial courts by waiving their exemption under W.Va.Code § 4–1–17 when possible and when their presence in the Legislature is not required.

### D. Prejudicial Effects of Statements

■ Next, the defendant asserts that the improper admission of Mitchell's and Ankeney's out-of-court statements was prejudicial to her convictions on the first and second counts of the indictment. The State argues, on the other hand, that the defendant's remaining convictions should be affirmed. We have already determined that the admission of Mitchell's and Ankeney's out-of-court statements was constitutional error. The question now is whether the admission of these statements was prejudicial to the defendant as to the first and second counts of the indictment.

We determined above that there is sufficient evidence to convince impartial minds of the defendant's guilt beyond a reasonable doubt on the first two counts of the indictment. Therefore, the issue is whether the improper admission of the Mitchell and Ankeney statements had any prejudicial effect on the jury in its findings of guilt on the first two counts of the indictment. We conclude that it did.

■ "Failure to observe a constitutional right constitutes reversible error unless it can be shown that the error was harmless beyond a reasonable doubt." Syllabus Point 5, State ex rel. Grob v. Blair, 158 W.Va. 647, 214 S.E.2d 330 (1975). The record indicates that after the jury retired to deliberate, it sent two inquiries to the trial judge. The first was, "Is there any possibility of our hearing testimony from A. Mitchell?" The second inquiry was "Did Jill [Hodge] and Charlie [Hodge] read a Mitchell statement? Or how much did they know about it before

they changed their original statements?"[8] The jury's first inquiry indicates that it placed significant weight on Mitchell's out-of-court statement. The jury's second inquiry indicates that Mitchell's out-of-court statement affected the way in which it assessed the testimony of Charlie Hodge and Jill Hodge.

Absent the testimony of Charlie Hodge and Jill Hodge, a jury could not have found the defendant guilty of the first two counts of the indictment. The guilt or innocence of the accused came down to the essential question of whose testimony to believe, the testimony of Charlie Hodge and Jill Hodge or the testimony of the defendant. The jury's second inquiry to the trial court suggests that Mitchell's out-of-court statement was a factor in the jury's credibility assessments of the testimony of the Hodges and the defendant. In other words, it appears that the fact that the Hodges' testimony was consistent on several points with Mitchell's out-of-court statement bolstered the credibility of the Hodges' testimony. Therefore, we are unable to conclude beyond a reasonable doubt that the improper admission of Mitchell's out-of-court statement was harmless to the jury's determinations on the first and second counts of the indictment. Accordingly, we reverse the defendant's convictions on the first and second counts of the indictment. Due to the possibility of retrial upon remand, we find it necessary to address some of the other assignments of error alleged by the defendant in order to provide guidance to the trial court upon remand.

### E. Guidance on Remand

■■■■ The defendant complains of the admission of "gruesome" photographs of the victim's corpse. The record indicates that the trial court failed to perform the proper analysis prior to admitting the photographs. We caution the trial court that "[t]he admissibility of photographs over a gruesome objection must be determined on a case-by-case basis pursuant to Rules 401 through 403 of the West Virginia Rules of Evidence." Syllabus Point 8, *State v. Derr,* 192 W.Va. 165, 451 S.E.2d 731 (1994). Further,

Rule 401 of the West Virginia Rules of Evidence requires the trial court to determine the relevancy of the exhibit on the basis of whether the photograph is probative as to a fact of consequence in the case. The trial court then must consider whether the probative value of the exhibit is substantially outweighed by the counterfactors listed in Rule 403 of the West Virginia Rules of Evidence. As to the balancing under Rule 403, the trial court enjoys broad discretion. The Rule 403 balancing test is essentially a matter of trial conduct, and the trial court's discretion will not be overturned absent a showing of clear abuse.

Syllabus Point 10, *State v. Derr.* Upon remand, the trial court must perform the above analysis prior to the admission of the challenged photographs.

■■■■ In addition, the defendant claims that the trial court erred in admitting evidence that the defendant sought to have her stepfather, John Hutsenpiller, killed. The State responds that the trial court held a hearing, issued a ruling on the evidence, and gave a limiting instruction. The State's specific legal basis for introducing the challenged evidence and the trial court's basis for its admission are not clear from the record. At trial, the State said that the evidence was introduced to show "malice, intent, approach or plan." The trial court's instruction concerning the evidence stated, in relevant part,

Any evidence of alleged conduct or other acts of which the defendant is not charged in this indictment is admitted for the limited purpose only and may be considered by you only for the purpose of demonstrating the defendant's motive, intent, preparation,

---

8. The trial court responded in writing that,

[t]he court has ruled that Linda Ankeny and Allen Mitchell were unavailable witnesses. Both were were [sic] represented by counsel who claimed legislative immunity, Chapter 4, Article 1, Section 17. Neither the state nor the defense were [sic] responsible for their absence. Their statements therefore were admissible.

In answer to your questions about Jill and Charlie, you must decide the case upon the evidence you have before you. I am sending you a complete copy of the court's charge.

plan, the identity of Richard O. Ladd's killer and absence of mistake or accident. We find that both the State's and the trial court's statements are insufficient under our law to support the admission of the challenged evidence.

This Court has held:

When offering evidence under Rule 404(b) of the West Virginia Rules of Evidence, the prosecution is required to identify the specific purpose for which the evidence is being offered and the jury must be instructed to limit its consideration of the evidence to only that purpose. It is not sufficient for the prosecution or the trial court merely to cite or mention the litany of possible uses listed in Rule 404(b). The specific and precise purpose for which the evidence is offered must clearly be shown from the record and that purpose alone must be told to the jury in the trial court's instruction.

Syllabus Point 1, *State v. McGinnis*, 193 W.Va. 147, 455 S.E.2d 516 (1994). In the instant case, the State and the trial court simply mentioned the litany of possible uses, and not the specific and precise purpose for the introduction of the evidence.

Further, we are at a loss as to how the defendant's desire or plan to kill her stepfather is relevant to any of the litany of purposes mentioned by the State and the trial court. There was evidence that the defendant expressed a desire to have her stepfather, John Hutsenpiller, killed because he received the defendant's deceased mother's estate and because he remarried within a year of the death of the defendant's mother. There was additional evidence that the defendant and Allen Mitchell devised a plan for Mitchell to kill the defendant's stepfather and that she supplied Mitchell with keys to her stepfather's house. It appears to us that this evidence in no way demonstrates the motive, intent, preparation, plan, identity of the killer, absence of mistake or accident in the death of Richard Ladd. While the evidence may show the defendant's greed, cold-heartedness, willingness to murder, or lack of respect for human life, this is exactly the type of evidence that Rule 404(b) prohibits. "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith." W.Va.R.Evid. 404(b), in part. Therefore, the admission of the defendant's alleged plan to kill John Hutsenpiller was error.

Next, the defendant challenges the State's production of evidence obtained from warrantless searches of the Ladd residence on October 20 and 21, 1998 and on April 19, 1999. The defendant argues that any evidence discovered during these warrantless searches was inadmissible because it violated the defendant's rights under the Fourth Amendment to the United States Constitution.

The record shows that officers seized several items from the Ladd residence during a search on October 20 and 21, 1998, and did not obtain a search warrant until the following day. The trial court held a hearing on the defendant's motion to suppress the evidence seized during the warrantless search and ruled that the evidence was admissible pursuant to the "independent source rule" which says that evidence obtained through inadmissible means may be admitted if a subsequent search warrant is obtained and the grounds on which the warrant is issued is not based on information from the illegal search. The trial court reasoned that the warrant acquired on the day following the warrantless search was based on the fact that Richard Ladd's body was found in the residence, and not on the evidence discovered during the warrantless search.

Under our law:

Searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment and Article III, Section 6 of the West Virginia Constitution—subject only to a few specifically established and well-delineated exceptions. The exceptions are jealously and carefully drawn, and there must be a showing by those who seek exemption that the exigencies of the situation made that course imperative.

Syllabus Point 1, *State v. Moore,* 165 W.Va. 837, 272 S.E.2d 804 (1980), *overruled in part on other grounds by State v. Julius,* 185 W.Va. 422, 408 S.E.2d 1 (1991). Further, "[t]he burden rests on the State to show by a preponderance of the evidence that the warrantless search falls within an authorized exception." Syllabus Point 2, *State v. Moore.*

There are three generally recognized exceptions to the exclusionary rule: (1) where evidence sought to be introduced has an independent source, (2) where the evidence would inevitably have been discovered, and (3) where the connection between unconstitutional police conduct and the discovery of the evidence is so attenuated as to remove any taint of the original illegality.

Syllabus Point 2, *State v. Hawkins,* 167 W.Va. 473, 280 S.E.2d 222 (1981). There is no "murder scene" exception to the Fourth Amendment. *See State v. Cook,* 175 W.Va. 185, 332 S.E.2d 147 (1985); *Mincey v. Arizona,* 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). Accordingly, in order to save the challenged evidence seized by the officers' warrantless search, the State must show that the warrantless search falls within one of the three recognized exceptions set forth above.

We find the trial court's ruling that the warrantless search falls within the independent source rule to be erroneous. In the context of challenged searches and seizures, the independent source rule is generally utilized to preserve the admissibility of evidence seized pursuant to a search warrant when it is alleged that the probable cause supporting the warrant was based on information acquired during a previous illegal search. For example in *State v. Peacher,* 167 W.Va. 540, 280 S.E.2d 559 (1981), troopers performed a warrantless search of the defendant's residence. During a subsequent search conducted pursuant to a search warrant, a deputy sheriff recovered a shirt that proved to be a key piece of evidence at the defendant's trial. The defendant challenged the admission of the shirt, and alleged that information in the application for the search warrant was derived from the initial illegal entry. This Court reiterated its holding in Syllabus Point 2 of *State v. Stone,* 165 W.Va. 266, 268 S.E.2d

50 (1980), *overruled in part on other grounds by State v. Julius,* 185 W.Va. 422, 408 S.E.2d 1 (1991), that "[p]roperty observed during an illegal or improper search cannot be subsequently seized pursuant to a lawful search warrant which was based solely upon observations made during the illegal search." Although the Court found that the initial entry was illegal, it concluded that the search warrant was valid under the independent source rule. The Court reasoned that even with the exclusion of the information in the application for the warrant that was derived from the illegal entry, there were sufficient facts stated in the affidavit upon which an impartial magistrate could have found probable cause. The Court held in Syllabus Point 9 of *State Peacher:*

An affidavit in support of an application for a search warrant which contains information that antedates, and is totally independent of, information learned from an unconstitutional search, as well as information from the unconstitutional search, may still be the basis upon which a valid search warrant may issue, if the information in the affidavit, excluding that information attributable to the unconstitutional search, is sufficient to justify a finding of probable cause.

Likewise, in *State v. Davis,* 176 W.Va. 454, 345 S.E.2d 549 (1986), the defendant assigned as error the trial court's failure to suppress, as fruit of the poisonous tree, clothing seized from his home pursuant to a search warrant obtained following a warrantless search of the premises. The Court found no error, and reasoned:

the police officer's affidavit [in support of a search warrant], containing absolutely no indicia of the existence of a previous search, corroborated his testimony that he was totally unaware of any search that had allegedly taken place on the date of the robbery. Absolutely no link was established by the appellant between the [illegal] search and the warrant which raised even a possibility of "exploitation" of the initial search by the police.

*Davis,* 176 W.Va. at 462, 345 S.E.2d at 557.

In contrast, the defendant in the instant case challenges the admission of the evidence

seized during the warrantless search, *not* the evidence recovered during the subsequent searches conducted pursuant to a warrant. Under these circumstances, the independent source rule cannot remove the illegality of the warrantless search. The illegal search is the *sole* source of the challenged evidence, and there is no independent source to purge the illegally seized evidence of its taint. While the trial court specifically found that "none of these [search] warrants were issued based on information or evidence obtained from the warrantless search of the house," this fact only renders admissible the evidence seized during the subsequent searches conducted with a warrant, not the evidence seized during the warrantless search. Therefore, the trial court's basis for admitting the evidence seized during the warrantless search is incorrect.

As noted above, however, another generally recognized exception to the exclusionary rule is the "inevitable discovery rule," which means that the evidence would have been discovered pursuant to a properly executed search warrant. Because we have reversed on other grounds, we need not decide whether the evidence seized during the warrantless search could be properly admitted under the inevitable discovery rule. Rather, this is a determination for the trial court on remand.

The defendant also complains that on April 19, 1999, the defendant's residence was again searched, and several items seized, in the absence of a warrant or a consent to search by the defendant. During a suppression hearing, Sergeant Faber of the Jackson County Sheriff's Department testified that Chris Morrison, the curator of the estate of Richard Ladd, notified him of the discovery of a couple of "long guns" while Mr. Morrison and his wife were cleaning the basement of the Ladd residence. As a result, Sergeant Faber went to the Ladd residence, received a consent to search the residence by Mr. Morrison, and seized a piece of drywall, a piece of cardboard, and a scrap of two-by-ten lumber in addition to the guns. This evidence was admitted at trial.

This Court has held:

The general rule is that the voluntary consent of a person who owns or controls premises to a search of such premises is sufficient to authorize such search without a search warrant, and that a search of such premises, without a warrant, when consented to, does not violate the constitutional prohibition against unreasonable searches and seizures.

Syllabus Point 8, *State v. Plantz,* 155 W.Va. 24, 180 S.E.2d 614 (1971), *overruled in part on other grounds by State ex rel. White v. Mohn,* 168 W.Va. 211, 283 S.E.2d 914 (1981). Said another way, "[a] search or seizure may be valid as against a particular person even if consent was obtained from a third party rather than from that person.... Consent may generally be given by ... a person who controls the premises[.]" 79 C.J.S. *Searches and Seizures* § 113, p. 175—76 (1995) (footnotes omitted). Other courts have stated that "[i]t is accepted law that one with authority over premises may voluntarily permit a warrantless search by police. This is true even if the authority is shared with another and the complaining party was in police custody at the time." *State v. Greer,* 39 Ohio St.3d 236, 240, 530 N.E.2d 382, 391 (1988) (citation omitted).

In the instant case, the State produced, at a suppression hearing, an attested copy of the appointment of Mr. Morrison as curator of the estate of Richard Ladd as well as a consent to search form signed by Mr. Morrison. A curator is "[a] temporary guardian or conservator appointed by the court to care for the property or person or both [of another]." Black's Law Dictionary 381 (6th ed.1990). According to W.Va.Code § 44–1–5 (1923), in part:

The curator shall take care that the estate is not wasted before the qualification of an executor or administrator, or before such estate shall lawfully come into possession of such executor or administrator. He may demand, sue for, recover, and receive all debts due to the decedent, and all his other personal estate, and when there is a will may, or if a will be in contest shall, with respect to any real estate whereof the decedent or testator may have died seized or possessed, exercise such rights as the executor or administrator with the will annexed could exercise, including the collec-

tion of any rents and profits of such real estate and the leasing of the same for a term not exceeding the period of the curator's incumbency.

This Court has opined that W.Va.Code § 44–1–5,

> contemplates that, pending the [will] contest and pending the determination of the rights of rival claimants, the administration of the estate is, by the appointment of a curator, to be placed in competent hands that will be impartial and even-handed as between the conflicting interests of the parties contesting the will.

*Moore v. Thomas,* 115 W.Va. 237, 240, 174 S.E. 876, 877 (1934).

The dispositive question in determining whether the curator of Richard Ladd's estate could properly consent to search of the premises is whether the curator had lawful control of the premises at the time he consented to the search. W.Va.Code § 44–1–5 provides that generally a curator has the same powers as the personal representative of the estate, whether the personal representative is an administrator in a case of intestacy or the executor of a will. Therefore, in order to decide whether a curator had control over the premises for the purpose of consenting to a search, we must first determine whether the personal representative would have such power.

It is the duty of personal representatives to administer the personal estates of decedents. W.Va.Code § 44–1–15 (1923). Concerning a decedent's real estate, this Court said a long time ago that,

> The real estate of an intestate in no wise, and for no purpose, goes into the possession or control of the administrator, but the legal title to the same descends directly to the legal heirs, subject, of course, to the just debts of the intestate, in so far at least at [sic] the personalty falls short of paying the same.

Syllabus Point 3 of *Laidley v. Kline,* 8 W.Va. 218 (1875). This rule, however, does not settle the question whether a personal representative has control over the premises for the purpose of consenting to a search of the premises. More recently, the Legislature, in W.Va.Code § 44–1–14 (2001), set forth the duty of personal representatives in regards to appraisement of both real estate and probate personal property.

According to this code section, personal representatives shall appraise all of the deceased's real estate, identifying it with particularity and description, and all of the deceased's personal probate property. This appraisement is a list of the items owned by the decedent, or in which the decedent has an interest, accompanied by the fair market value of the items at the date of the decedent's death. It is prima facie evidence of the property received by the personal representative as well as the value of the property listed. W.Va.Code § 44–1–14(c). According to W.Va.Code § 44–1–14(d), any personal representative who refuses or declines, without reasonable cause, to comply with the provisions of this code section is guilty of a misdemeanor. In addition, a civil action may be maintained against a personal representative in the event any part of the estate is taken, wasted, damaged, or destroyed. W.Va.Code § 44–1–23 (1982).

It is obvious to this Court that, although a personal representative does not control or possess the real estate of a decedent in a legal sense, the personal representative of necessity must have access to and some control of the premises of the decedent in order to carry out his or her statutory obligations. Specifically, a personal representative must have the power to enter the premises in order to inventory, appraise, and secure the decedent's personal property. Also, while statutory law does not grant to a personal representative the control or possession of a decedent's real estate, a will, by its express terms, may grant to the executor the power to manage, convey, or even possess real estate. W.Va.Code § 44–8–1 (1987); *Linton v. Linton,* 114 W.Va. 711, 173 S.E. 778 (1934). Accordingly, we hold that a curator of an estate, appointed pursuant to W.Va.Code § 44–1–5, who has lawful control of the decedent's premises, is authorized to consent to a search of the premises of the estate and the search of such premises, without a warrant, when consented to by the curator, does not

violate the constitutional prohibition against unreasonable searches and seizures.

The question of whether a curator has the authority to consent to a search of the decedent's premises is a factual inquiry that must be made by the trial court. Of significance are the circumstances in which the curator granted consent. If the curator was exercising control of the premises for the purpose of appraising the property of the decedent at the time he or she consented to a search of the premises, the trial court may find that the curator had the authority to consent to a search. Also, the specific provisions of a will may give the curator control or possession of the premises sufficient to consent to a search. Because we are unable to make this determination from the record before us, we remand this issue to the trial court.

■■■■ The defendant further asserts that the assistant prosecuting attorney, Leah Boggs, should have been disqualified from participating in the trial. The defendant moved the trial court to disqualify Ms. Boggs because of her marriage to Sergeant Boggs of the Jackson County Sheriff's Department, an investigating officer who testified on behalf of the State at the defendant's trial. The State opposed the motion. After a hearing, the trial court denied the defendant's motion to disqualify Ms. Boggs. The State subsequently moved *in limine* to suppress any mention at trial of the marriage between the prosecuting attorney and the investigating officer, and the trial court granted the State's motion. The defendant now argues that the trial court's denial of her disqualification motion and the trial court's granting of the State's motion *in limine* were error.

Prosecutorial disqualification can be divided into two major categories. The first is where the prosecutor has had some attorney-client relationship with the parties involved whereby he obtained privileged information that may be adverse to the defendant's interest in regard to the pending criminal charges. A second category is where the prosecutor has some direct personal interest arising from animosity, a

financial interest, kinship, or close friendship such that his objectivity and impartiality are called into question.

Syllabus Point 1, *Nicholas v. Sammons,* 178 W.Va. 631, 363 S.E.2d 516 (1987). The claim in the instant case concerns the second major category of disqualification, i.e., that due to the assistant prosecutor's kinship with the investigating officer, her objectivity and impartiality are called into question. "Under circumstances where it can reasonably be inferred that the prosecuting attorney has an interest in the outcome of a criminal prosecution beyond ordinary dedication to [her] duty to see that justice is done, the prosecuting attorney should be disqualified from prosecuting the case." Syllabus Point 4, in part, *State v. Knight,* 168 W.Va. 615, 285 S.E.2d 401 (1981). In determining this issue, "[t]he focus becomes whether the prosecutor's interest is public or personal." *State v. Pennington,* 179 W.Va. 139, 147, 365 S.E.2d 803, 811 (1987).

The parties have presented no case law squarely on point, and our research has not disclosed any. This Court has found that a prosecutor held a personal interest in the outcome of a prosecution where the defendant had previously instituted a civil action against the prosecutor. *Martin v. Leverette,* 161 W.Va. 547, 244 S.E.2d 39 (1978). In *State v. Knight,* 168 W.Va. 615, 285 S.E.2d 401 (1981), the defendant was charged with indecent exposure. Prior to trial, defense counsel filed a motion to disqualify the prosecuting attorney because the defendant had been convicted of stealing materials from the prosecutor's houseboat and had failed to make court-ordered restitution to the prosecutor. Also, the only State witness was the prosecutor's personal secretary. In holding that it was reversible error for the prosecuting attorney not to recuse himself, the Court observed that the prosecutor's former association with the appellant and his relationship with the only state witness in the case combined to make the case appear to serve as a vendetta of sorts.[9]

9. *See also, Nicholas v. Sammons,* 178 W.Va. 631, 363 S.E.2d 516 (1987) (holding that prosecutor was not disqualified from prosecuting defendant

for obtaining money by false pretenses from bank due to fact that prosecutor was depositor at bank and had previously represented bank in civil

In the instant case, the mere fact of the assistant prosecutor's marriage to an investigating officer and witness does not indicate to us that the assistant prosecutor's interest in convicting the defendant was personal. The defendant implies that the assistant prosecutor was motivated by the knowledge that her failure to convict the defendant on the third count of the indictment, the alleged conspiracy involving Allen Mitchell, would embarrass her husband due to his extensive involvement in the investigation of Allen Mitchell. We do not agree. Both Ms. Boggs and Sergeant Boggs were involved in the trial solely in their professional capacities, which is in contrast to the parties in *Knight.* Nothing in the facts of this case gives rise to a reasonable inference that Ms. Boggs possessed an interest in the outcome of the trial beyond ordinary dedication to her duty.

 We believe, however, that the defendant should have been able to cross-examine Sergeant Boggs concerning his relationship to the assistant prosecutor.

Several basic rules exist as to cross-examination of a witness. The first is that the scope of cross-examination is coextensive with, and limited by, the material evidence given on direct examination. The second is that a witness may also be cross-examined about matters affecting his credibility. The term "credibility" includes the interest and bias of the witness, inconsistent statements made by the witness and to a certain extent the witness' character. The third rule is that the trial judge has discretion as to the extent of cross-examination.

Syllabus Point 4, *State v. Richey,* 171 W.Va. 342, 298 S.E.2d 879 (1982). While Ms. Boggs's marriage to Sergeant Boggs does not compel her disqualification under our rules, the fact that Sergeant Boggs presented extensive testimony in a case prosecuted, in part, by his wife, and the fact that his wife

conducted the direct examination of Sergeant Boggs, make their marital relationship relevant to any potential bias or interest which may have influenced Sergeant Boggs's testimony. Therefore, we find that it was an abuse of discretion for the trial court to exclude reference to the Boggses' marriage during the trial.

 Finally, the defendant asserts that the circuit court erred in denying her motion to bifurcate her trial in order to try the charge in the third count of the indictment, the alleged conspiracy with Mitchell, separately from the two other counts. According to the defendant, the State improperly used Mitchell's statement to prove the unrelated alleged conspiracy between the defendant, Charlie Hodge, Jill Hodge, and Buddy Jarrell when the State knew that the Mitchell evidence would be otherwise inadmissible.

 West Virginia Rule of Criminal Procedure 14(a) provides that "[i]f it appears that a defendant ... is prejudiced by a joinder of offenses ... for trial together, the court may order ... separate trials of the counts[.]" In *State v. Hatfield,* 181 W.Va. 106, 110, 380 S.E.2d 670, 674 (1988), this Court explained that the joinder of offenses promotes judicial efficiency and economy by avoiding needless multiple trials and concluded that joinder is a generally appropriate legal procedure. Even where joinder is proper, however, a defendant may move, as the defendant in the instant case did, for severance of the counts pursuant to Rule 14(a). The decision whether to grant a motion for separate trials pursuant to Rule 14(a) rests in the sound discretion of the trial court. *See State v. Hatfield,* 181 W.Va. at 110, 380 S.E.2d at 674.

 In Syllabus Point 2 of *State v. Milburn,* 204 W.Va. 203, 511 S.E.2d 828 (1998), this Court held that "[a] defendant is not entitled to relief from prejudicial joinder pursuant to Rule 14 of the West Virginia

matters); and *State v. Pennington,* 179 W.Va. 139, 365 S.E.2d 803 (1987) (finding it was not error for prosecutor not to disqualify himself where he had placed newspaper advertisement

in response to his election opponent's advertisement questioning his grant of immunity to witness in the defendant's case).

Rules of Criminal Procedures when evidence of each of the crimes charged would be admissible in a separate trial for the other." West Virginia Rule of Evidence 404(b) provides that evidence of other crimes may be admissible to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. In this case, we believe that evidence of the defendant's sexual relationship with Mitchell, and its attendant circumstances, would have been admissible to suggest the defendant's motive to murder her husband. We further believe that evidence of the alleged conspiracy with Mitchell was admissible under the rubric of common plan, scheme, or design. Accordingly, we find no error in the circuit court's denial of the defendant's motion for separate trials.[10]

### III.

### CONCLUSION

For the reasons stated above, we reverse the defendant's convictions and we remand for proceedings consistent with this opinion.

Reversed and remanded.

---

**10.** The defendant raises several other assignments of error. Because of our disposition of this case, we find it unnecessary to address the following alleged errors: the trial court's failure to grant a continuance due to the unavailability of critical witnesses; the State's concealment of the results of Allen Mitchell's polygraph test; and ineffective assistance of counsel based on defense counsel's exclusion from Buddy Jarrell's trial.

Further, we find no merit to the defendant's claim that the trial court erred in excluding a videotape offered by the defendant. The defendant sought to introduce a videotape to support her theory that Charlie Hodge committed the murder independently of her for the purpose of commencing an intimate relationship with the defendant and obtaining control of the Ladd farm. The videotape purports to illustrate the contrast between the large, well-kept Ladd farm and the small, run-down farm owned by Charlie Hodge. We note, however, that this contrast was revealed through testimony so that the videotape evidence would have been cumulative. Finally, we find no merit to the defendant's claim that the trial court's failure to suppress her statement to officers on the morning following Richard Ladd's murder was error.