# CIRCUIT COURT OF LOUDOUN COUNTY

Commonwealth of Virginia

v.

Jeremy Jaynes

Case No. (Criminal) 15885

Commonwealth of Virginia

v.

Richard Rutkowski

Case No. (Criminal) 15886

Commonwealth of Virginia

v.

Jessica DeGroot

Case No. (Criminal) 16121

May 25, 2004

BY JUDGE THOMAS D. HORNE

Jeremy Jaynes, Richard Rutkowski, and Jessica DeGroot were indicted by the grand jury of Loudoun County for violations of the provisions of Va.

Code Ann. § 18.2-152.3:1. It is alleged, that at various times during the period from July 11, 2003, to August 9, 2003, the defendants used a computer or computer network with the intent to falsify or forge electronic mail transmission information or routing information in connection with the transmission of unsolicited bulk electronic mail, spam, through or into the computer network of an electronic mail service provider or its subscribers. In addition to criminal sanctions, the General Assembly has provided both injured electronic mail service providers and their subscribers with the right to recover damages from the offending person. Va. Code Ann. § 18.2-152.12. It is asserted that America Online, an electronic mail service provider, is a victim of the instant transmissions of unsolicited bulk electronic mail, otherwise known as "TUBES".

The Attorney General has, with the concurrence of the Commonwealth's Attorney for Loudoun County, elected to prosecute these cases pursuant to the express grant of authority by the legislature. Va. Code Ann. § 2.2-511. Counsel agree that America Online was a campaign donor to the election of the Attorney General. A campaign finance disclosure report submitted by the defendants for the years 2001, 2002, and 2003 would suggest that the aggregate of both cash and in kind contributions by America Online on behalf of the Attorney General were approximately $15,000.00. According to the proffer made by the Commonwealth, this amount represents a small percentage of the contributions made on behalf of the Attorney General.

In the instant case, the Office of the Attorney General has elected to prosecute criminal offenses pursuant to express legislative grant. The prosecutor's duties "include the impartial prosecution of those accused of crime and the duty to see that an accused is afforded a fair trial." *Lux v. Commonwealth*, 24 Va. App. 561, 568 (1997). Due process requires disqualification of the prosecutor where he or she "has a conflict of interest relevant to the defendant's case." *Id.* at 569. While the decision to disqualify rests within the sound discretion of the trial court, a defense motion to disqualify a prosecuting attorney should be granted where "it can be reasonably inferred that the [prosecutor] has either a personal interest in the outcome of the prosecution or an interest arising from his or her former representation of the defendant that conflicts with the fair-minded exercise of his or her prosecutorial function." *Id.* The "personal interest" of the prosecutor that would warrant disqualification may involve an interest, "arising from animosity, a financial interest, kinship, or close friendship such that his objectivity and impartiality are called into question." *Id.* (authority omitted).

The Attorney General is a public official. In his official capacity, he is required to enforce the laws. This may, as in the instant case, take the form of a criminal prosecution. Necessary to his service is the requirement that he be elected. Fundraising and ever increasing financial commitments connected with the election process are part of the everyday fabric of political life in America. It would be a flawed system if criminal defendants could summarily remove a prosecutor and his or her assistants from a case by showing they had donated to the campaign of the prosecutor. Furthermore, absent a showing of evidence to the contrary, it may be presumed that persons donate to political campaigns for the same reason they vote for candidates. That is, either the personality of the candidate, party affiliation, or issues drive a person's participation in the political process. Thus, the focus in this case must be on whether the Attorney General's interest is public or personal.

Nothing in the record of this case would lead one to conclude that the Attorney General had previously represented America Online or had a professional relationship with that business before or after seeking any of the indictments in this case. The nature and amount of the donations were not of such magnitude or consequence that might lead reasonable minds to question whether the prosecutor's actions in pursuing the instant prosecutions represented a personal debt rather than a public commitment to the administration of justice. Conversely, there are no facts in this case that give "rise to a reasonable inference that [the Attorney General] possessed an interest in the outcome of the trial beyond ordinary dedication to [his] duty." *West Virginia v. Ladd*, 210 W. Va. 413, 557 S.E.2d 820, 844 (2001). An independent determination was made by the grand jury as to probable cause. *Wisconsin v. Retzlaff*, 171 Wis. 2d 99, 490 N.W.2d 750 (1992). There is no evidence of shared decision-making with the victim. Those charged with prosecuting the instant offenses are assistant attorneys general, including the director of a Computer Crimes Unit. Such specialization is seldom found in the offices of local commonwealth's attorneys. It is logical that such professionals would undertake the instant prosecutions.

Accordingly, the Motion to Disqualify the Office of the Attorney General from the prosecution of this case is denied.

Counsel for the defendants have filed motions to compel and a motion to suppress arising out of the execution of a search warrant in the State of North Carolina. The federal court in North Carolina has placed the affidavit supporting the warrant under seal. As the affidavit is necessary to a determination of the validity of the warrant and is beyond the jurisdiction of this Court to require production, it was necessary to continue the motion to suppress and related matter concerning the production of the affidavit. That matter has been set for review.

The Motion for a Bill of Particulars is denied. A bill of particulars is not a substitute for discovery and is only required when the indictment fails to notify the defendant of the nature and character of the offense charged. Va. Code Ann. § 19.2-230; *Yeager v. Commonwealth*, 16 Va. App. 761 (1993). A defendant is not entitled to a bill of particulars as a matter of right. *Quesinberry v. Commonwealth*, 241 Va. 364, *cert. denied*, 502 U.S. 834 (1991). Three functions are served by a bill of particulars. One is to provide the defendant with sufficient detail concerning the offense to mount a defense. *Hagood v. Commonwealth*, 157 Va. 918 (1932). Another is to avoid trying the defendant upon a charge for which he has not been indicted. *Livingston v. Commonwealth*, 184 Va. 830 (1946). Lastly, a bill of particulars affords the defendant the opportunity to plead acquittal of the charge as a bar to subsequent prosecution for the offense. *Ramdass v. Commonwealth*, 246 Va. 413 (1993).

Each of the goals sought to be obtained by a bill of particulars is satisfied by the indictments without further supplementation. The indictments describe where and when the offenses were allegedly committed in sufficient detail to permit each of the defendants to plead, mount a defense, and protect themselves from vexatious prosecutions. Routing information, names of electronic mail service providers and their subscribers, and the identity of the recipients of the transmissions need not be charged. It is the act of transmission and not the actual receipt that is circumscribed by the relevant statute.