650 S.E.2d 104

**Frederico HATCHER, Petitioner Below, Appellant**

v.

**Thomas McBRIDE, Warden, Respondent Below, Appellee.**

No. 32977.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 6, 2006.

Decided Nov. 21, 2006.

Susan Breece, Huntington, for Appellant.

Darrell V. McGraw, Jr., Attorney General, Robert D. Goldberg, Assistant Attorney General, Charleston, for Appellee.

STARCHER, J.:

Appellant appeals from an order entered by the circuit court of Cabell County denying his petition for a writ of habeas corpus. The appellant claims in his petition that his sentencing following the penalty phase of a bifurcated trial in which the appellant was convicted of murder in the first degree was prejudiced by highly prejudicial and opinionated statements made by a circuit judge who

testified as a witness on behalf of the State. For the reasons set forth below, we affirm the dismissal of appellant's petition.

## I.

### Facts & Background

On October 22, 1995, a clerk at the Convenient Food Mart in Huntington was shot three times with a .357 Magnum revolver and killed. Mike Walker and Shawn Tabor confessed to the offense after which Walker, Tabor, and the appellant were arrested for the murder.

On February 8, 1996, the grand jury of Cabell County returned an indictment for murder against the appellant, Frederico Hatcher, and also against Michael Walker and Shawn Tabor. On June 24, 1996, the trial against the appellant was commenced. Both Walker and Tabor testified at the trial of the appellant.

At trial Walker testified that during an attempt to shoplift beer from the convenience store, the appellant shot the victim twice and then handed him [Walker] the gun and told him [Walker] to "shoot him or else." Walker further testified that he was afraid of the appellant, and was in fear for himself, or for his sister. Walker then also shot the victim. Tabor testified that the appellant stated an intention to shoot the clerk during the robbery because the appellant already had one criminal charge pending and that he "did not need any witnesses." After the shooting and while leaving the store, Walker dropped the gun outside and all three men fled.

The appellant's trial concluded on the 27th day of June, 1996, with a verdict of guilty of first degree murder.

The penalty phase of the trial was commenced on the same day, the 27th day of June, after the guilty verdict was returned. During the penalty phase of the trial, the prosecuting attorney called Judge Alfred E. Ferguson to testify. Judge Ferguson was not listed as a witness for the State until about three hours before the penalty phase

of the trial began. The record does not indicate that the appellant objected to the State's decision to call the judge as a witness. During the judge's testimony, the prosecuting attorney repeatedly referred to Judge Ferguson as "Judge." [1]

Following Judge Ferguson's testimony which centered on the judge's experience with the defendant as a juvenile, the jury completed its work in the penalty phase of the trial. The jury did not return a recommendation for mercy.

On August 13, 1996, the circuit court sentenced the appellant to the custody of the Commissioner of Corrections for assignment to the "Penitentiary of this State, there to be confined for a period 'Life Without a Recommendation of Mercy.'" The appellant appealed his conviction, and on October 1, 1997, this Court refused to grant the direct appeal.

The appellant filed the instant habeas corpus petition in circuit court on December 22, 1998. For some reason it was not until May 23, 2005, that the circuit court held the habeas corpus hearing. On May 27, 2005, the circuit court entered an order denying the petition. It is from this order that the appellant appeals.

This Court granted the petition for appeal of the denial of appellant's writ of habeas corpus, limited to Assignment of Error No. 1: "Whether Mr. Hatcher's sentencing was unfairly prejudiced by highly prejudicial statements made by a Circuit Judge."

## II.

### Standard of Review

■ "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syllabus Point 1 of

---

1. The prosecuting attorney referred to the witness by his official title of "judge" a total of twenty times during the testimony.

*Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).

### III.

#### *Discussion*

#### A.

██ The appellant's argument essentially is that the probative value of the judge's testimony was grossly outweighed by its unfair prejudice to the appellant. This argument is to be considered under Rule 403 of the *West Virginia Rules of Evidence*.[2] Assessing the potential prejudice and how it should be weighed is generally within the broad discretion of the trial court, and such assessment will not be disturbed unless we find an abuse of discretion. In Syllabus Point 10 of *State v. Derr*, 192 W.Va. 165, 451 S.E.2d 731 (1994), we said, in part:

... As to the balancing under Rule 403 [of the *West Virginia Rules of Evidence*], the trial court enjoys broad discretion. The Rule 403 balancing test is essentially a matter of trial conduct, and the trial court's discretion will not be overturned absent a showing of clear abuse.

██ In the instant case the appellant asserts that the judge's testimony violates the Canons 1, 2 and 3 of the *Code of Judicial Conduct*.[3]

It is Canon 2.B. of the *Code of Judicial Conduct* that addresses the issue of a judge testifying as a character witness. The Canon states, in part, as follows:

... A judge shall not lend the prestige of judicial office to advance the private interests of the judge or others; nor shall a judge convey or knowingly permit others to convey the impression that they are in a special position to influence the judge. *A judge shall not testify voluntarily as a character witness.*

(Emphasis added.)

Furthermore, the commentary following Canon 2.B. contemplates judicial testimony. The commentary, in part, suggests that:

Maintaining the prestige of judicial office is essential to a system of government in which the judiciary functions independently of the executive and legislative branches. Respect for the judicial office facilitates the orderly conduct of legitimate judicial functions. Judges should distinguish between proper and improper use of the prestige of office in all of their activities ....

. . .

A judge must not testify voluntarily as a character witness because to do so may lend the prestige of the judicial office in

---

**2.**

> **Rule 403. Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time.**
> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

**3.** While appellant cites Canons 1, 2, and 3 in his brief, the primary focus of his argument centers on the language found in Canon 2.B. Canon 2 states as follows:

> **A judge shall avoid impropriety and the appearance of impropriety and the appearance of impropriety in all of the judge's activities.**
> A. A judge shall respect and comply with the law, shall avoid impropriety and the appearance of impropriety in all of the judge's activities, and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
> B. A judge shall not allow family, social, political, or other relationships to influence the judge's judicial conduct or judgment. A judge

shall not lend the prestige of judicial office to advance the private interests of the judge or others; nor shall a judge convey or knowingly permit others to convey the impression that they are in a special position to influence the judge. A judge shall not testify voluntarily as a character witness.
C. A judge shall not hold membership in any organization that practices invidious discrimination on the basis of race, sex, religion, or national origin. For the purposes of this Canon, an "organization which practices invidious discrimination" shall mean any organization which arbitrarily excludes persons from membership upon the basis of race, sex, religion, or national origin. The term "organization" shall not include, however, an association of individuals dedicated to the preservation of religious, ethnic, historical, or cultural values of legitimate common interest to its members; or an intimate, distinctly private association of persons whose membership limitations would be entitled to constitutional protection.

10

support of the party for whom the judge testifies. Moreover, when a judge testifies as a witness, a lawyer who regularly appears before the judge may be placed in the awkward position of cross-examining the judge. A judge may, however, testify when properly summoned. Except in unusual circumstances where the demands of justice require, a judge should discourage a party from requiring the judge to testify as a character witness.

The only express restriction in the *Code of Judicial Conduct* on a judge's testimony is that a judge *must not testify voluntarily* as a character witness inasmuch as in doing so it may lend the prestige of the judicial office in support of a party to the litigation. In general, however, a judge *may testify* pursuant to a summons, because a judge has an ethical duty to "respect and comply with the law." *See* Canon 2.A.

We find no support in the record that any provision of the *Code of Judicial Conduct* was specifically violated by allowing the judge to testify in this case; therefore, this particular appellant argument is rejected.

B.

We next address the appellant's contention that Judge Ferguson's testimony relating to future dangerousness of the appellant was not proper for two reasons. First, the appellant contends that the judge's testimony revealed the judge's mental thought process in forming an official opinion, and, second, that he was testifying beyond his expertise when providing an opinion on the future dangerousness of the appellant.

The appellant cites *State ex rel. Kaufman v. Zakaib, et al.*, 207 W.Va. 662, 535 S.E.2d 727 (2000) as authority in support of his argument that the judge's testimony was improper because it revealed the judge's mental thought processes in forming opinions in cases involving the appellant as a juvenile. We believe the appellant's reliance on *Kaufman* is misplaced. *Kaufman* relates to eliciting testimony in a deposition in a civil case about mental processes used by a judge in making official decisions in a specific case. The testimony in the instant case relates to testimony elicited from the judge about the appellant's propensity toward future dangerousness based upon the judge's experience with the appellant in court as a juvenile, and not the mental processes used by the judge in making his official decisions. For this reason we find that the appellant's contention in this particular is without merit.

Second, on the issue of future dangerousness of the appellant, the appellant contends that the judge testified in an area in which he had no expertise. The appellee persuasively argues that lay witnesses may offer opinions under certain circumstances. Rule 701 of the *West Virginia Rules of Evidence* states as follows:

**Rule 701. Opinion testimony by lay witnesses.**

If the witness is not testifying as an expert, his or her testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

Our analysis of Rule 701 was discussed in *State v. Nichols*, 208 W.Va. 432, 438, 541 S.E.2d 310, 316 (1999) (overruled on other grounds) in which we held in Syllabus Point 2 that:

In order for a lay witness to give opinion testimony pursuant to Rule 701 of the West Virginia Rules of Evidence (1) the witness must have personal knowledge or perception of the facts from which the opinion is to be derived; (2) there must be a rational connection between the opinion and the facts upon which it is based; and (3) the opinion must be helpful in understanding the testimony or determining a fact in issue.

Considering that the judge-witness in the instant case had presided over several of the appellant's juvenile adjudications and had observed the appellant's response to several dispositional alternatives ordered by the judge, as well as his demeanor in court, we believe that the judge was well positioned to offer his opinion regarding the appellant's future dangerousness. The judge, while testifying from his perspective as circuit judge

and his experience with the appellant, testified as a lay witness, and not as an expert witness. We believe that the judge's testimony regarding future dangerousness complied with Rule 701 of the *West Virginia Rules of Evidence* and our case law, and, therefore, find that the appellant's contention in this particular is also without merit.

### C.

■ This habeas corpus action was filed pursuant to *W.Va.Code,* 53–4A–1 (1967) *et seq.,* which states, in relevant part, as follows:

> Any person convicted of a crime and incarcerated under sentence of imprisonment therefor who contends that there was such a denial or infringement of his rights as to render the conviction or sentence void under the Constitution of the United States or the Constitution of this State, or both, or that the court was without jurisdiction to impose the sentence, or that the sentence exceeds the maximum authorized by law, or that the conviction or sentence is otherwise subject to collateral attack upon any ground of alleged error heretofore available under the common-law or any statutory provision of this State, may, without paying a filing fee, file a petition for a writ of habeas corpus ad subjiciendum, and prosecute the same, seeking release from such illegal imprisonment, correction of the sentence, the setting aside of the plea, conviction and sentence, or other relief, . . . .

*W.Va.Code,* 53–4A–1(a) (1967).

■ We have said that "[a] habeas corpus proceeding is not a substitute for a writ of error in that ordinary trial error not involving constitutional violations will not be reviewed." Syllabus Point 4 of *State ex rel. McMannis v. Mohn,* 163 W.Va. 129, 254 S.E.2d 805 (1979) Cert. Denied, 464 U.S. 831, 104 S.Ct. 110, 78 L.Ed.2d 112 (1983); *State ex. rel. Phillips v. Legursky,* 187 W.Va. 607, 420 S.E.2d 743 (1992) (Per Curiam) (quoting Syllabus Point 4, *McMannis*); Syllabus Point 3, *State ex rel. Crupe v. Yardley,* 213 W.Va. 335, 582 S.E.2d 782 (2003) (Per Curiam) (quoting Syllabus Point 4 of *McMannis*).

■ Absent "circumstances impugning fundamental fairness or infringing specific constitutional protections," admissibility of evidence does not present a state or federal constitutional question. *Grundler v. North Carolina,* 283 F.2d 798, 802 (4th Cir.1960); *see also Howard v. Moore,* 131 F.3d 399, 415 n. 18 (4th Cir.1997) (state evidentiary rulings are not cognizable in habeas corpus unless shown to violate fundamental fairness).

■ State court evidentiary rulings respecting the admission of evidence are cognizable in habeas corpus only to the extent they violate specific constitutional provisions or are so egregious as to render the entire trial fundamentally unfair and thereby violate due process under the Fourteenth Amendment. *Estelle v. McGuire,* 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *Spencer v. Murray,* 5 F.3d 758, 762 (4th Cir.1993); *Howard v. Moore, supra; Burket v. Angelone,* 208 F.3d 172, 186 (2000).

We believe from a review of the record in this case that the appellant failed to show that the admission of the testimony of the judge-witness violated any specific constitutional right. Further, we cannot say based upon the record that the trial court abused its discretion in weighing the probative value of the judge's testimony against potential prejudice to the defendant. Even if we could so find, and we do not, the prejudice would have to be so egregious as to constitute a denial of due process.

### D.

Notwithstanding our findings that the appellant's claim did not rise to the level of constitutional prohibition, we believe that there is a potential for abuse through the use of judicial testimony. We further believe it may be helpful to provide our trial courts some guidance for future instances when confronted with the issue of judicial testimony. While the appellant unsuccessfully argued the applicability of *United States v. Frankenthal,* 582 F.2d 1102 (7th Cir.Wis.1978) and *United States v. Roth,* 332 F.Supp.2d 565 (S.D.N.Y., 2004), two federal cases, to the specifics in this case, we believe the discussions contained in *Frankenthal* and *Roth,* as

well as other state cases, offer valuable guidance.

*Frankenthal, supra,* was a criminal case in which the testifying judge had previously recused himself from sitting as the trial judge. The testifying judge later testified under subpoena issued by the government as a rebuttal witness about factual matters pertaining to a meeting he previously had with an attorney and family friend of the defendant. The testimony was elicited for the purpose of impeaching the testimony of the attorney who met with the testifying judge. The attorney who met with the judge testified at the trial of the defendant. The judge's impeachment testimony was brief and only pertained to factual matters. Furthermore, the trial judge gave an instruction to the jury that the judge's testimony was only to be considered in assessing the testifying attorney's credibility and in no way constituted evidence against the defendant. The appellate court concluded that the judge's testimony was handled in an appropriate manner adequate to minimize any risk of unfair prejudice.

*Roth, supra,* was also a criminal case. In *Roth* the defendants subpoenaed a state judge to testify concerning both his mental processes used in formulating his decision in accepting a plea in a related criminal case and to testify as to other factual matters. The court cited numerous authorities that a judge may not be compelled to testify concerning the judge's mental processes. We decided this issue in *State ex rel. Kaufman v. Zakaib,* 207 W.Va. 662, 535 S.E.2d 727 (2000). *See* earlier discussion III.B.

In analyzing the judge's potential factual testimony, the *Roth* court relied on the *Frankenthal* case and found that:

> . . . a judge may only be required to testify if he (1) possesses factual knowledge, (2) that knowledge is highly pertinent to the jury's task, and (3) is the only possible

source of testimony on the relevant factual information.

*Roth, supra,* at 568.

In both *Frankenthal* and *Roth* the testimony was, in part, factual and in neither opinion evidence. Both cases, however, recognized the seriousness of calling a judge to testify by the use of the following terms in referring to a judge's potential testimony as: creating "sensitive problems," requiring "delicate attention," and requiring "heightened scrutiny." [4]

In addition to *Frankenthal* and *Roth,* we also find decisions from our sister state courts that are instructive. In *Joachim v. Chambers,* 815 S.W.2d 234 (Tex., 1991), a judge was called as a witness to testify as an expert in a legal malpractice case. The judge's testimony was essentially that the defendant-attorney's conduct did not fall below the standard of good practice. Citing to Canon 2 of the *Code of Judicial Conduct,* the Supreme Court of Texas found such testimony inappropriate:

> The last sentence of Canon 2, which restricts judges from voluntarily testifying as character witnesses, is but a specific application of the more general principles in the canon. These principles do not concern a judge's competency to testify; as a rule, a judge is competent to testify at any trial except one over which he is presiding. . . . The concern, rather, is over the propriety of a judge's testifying. A judge may assume the witness chair like anyone else, but he does not so easily lay aside robe and gavel. His testimony about a person's character may appear to be more than mere opinion and may be mistaken for a judicial pronouncement. Indeed, the likelihood of such misperception and the corresponding enhancement of a party's

---

**4.** In *United States v. Frankenthal,* 582 F.2d 1102, 1108 (7th Cir.Wis.1978) the court stated that "... the possibility that prestige, dignity, and authority may have somehow been imparted to the prosecution's case by the judge's appearance on its behalf cannot be lightly dismissed....," and that the judge's testimony "creat[ed] sensitive problems requiring delicate attention ..."

In *United States v. Roth,* 332 F.Supp.2d 565, 567 (S.D.N.Y., 2004) the court stated that the rules of evidence and Code of Judicial Conduct "... reflect a presumption against judicial testimony, which presumption warrants heightened scrutiny when a party seeks to require a judge to testify."

position are often the very reasons for eliciting the judge's testimony . . . .

*Joachim, supra,* at 237.

The *Joachim* court went on to state:

There is yet another reason for restricting judges from testifying as witnesses. The appearance of a judge as a witness threatens, rather than promotes, "public confidence in the integrity and impartiality of the judiciary." A judge who testifies that one party to a case does or does not have good character seems, at least, to be taking sides in the litigation. This is inconsistent with the role of a judge. The risk of confusion of the roles of witness and judge when the same person acts as both can create an appearance of impropriety. For this reason, the comment to . . . Canon 2 warns: "Except in unusual circumstances where the demands of justice require, a judge should discourage a party from requiring the judge to testify as a character witness." Although Canon 2 specifically restricts judges only from testifying [voluntarily] as character witnesses, the underlying principles may apply to other judicial testimony, especially expert testimony. A judge who testifies as an expert witness for a private litigant provides more than evidence; the judge also confers the prestige and credibility of judicial office to that litigant's position, just as a judge who testifies to the litigant's character. Expert witnesses, unlike judges, rarely appear impartial; a party does not ordinarily call an expert whose testimony is unfavorable. An expert witness is offered to support a party's position, and if the expert is a judge, the jury may mistake that support for an official endorsement. An expert witness is usually subject to more rigorous interrogation than a character witness. Thus, the opportunity for strained relations between a judicial witness and a cross-examining attorney bent on discharging his duty to zealously represent his client is perhaps greater when the judge is testifying as an expert than as a character witness. The danger that the judge will not be able to set aside the memory of the interrogation when the attorney appears before the judge in other

cases is at least as real. Even when there is no actual impropriety, the appearance of impropriety looms.

*Joachim, supra,* at 238.

In *Sansone v. Garvey,* 188 Or.App. 206, 71 P.3d 124 (2003), a trial judge was called as a witness in a legal malpractice case. The trial judge who was called had presided over the underlying civil action which gave rise to the malpractice claim. Initially, the judge-witness was to be called for fact and opinion testimony; however, the trial judge ultimately limited the judge's testimony to factual observations. Additionally, the trial judge gave a cautionary instruction before the judge testified, and again when the jury was instructed. The Oregon Supreme Court ultimately affirmed the trial court.

In *People v. Willis,* 349 Ill.App.3d 1, 811 N.E.2d 202, 284 Ill.Dec. 907 (2004), Willis was being tried for murder a second time after being granted a new trial. The trial judge who presided over the defendant's first trial was allowed to testify in the second trial over the objection of the defendant. The judge's testimony was used to confront or impeach the defendant's testimony in the second trial by permitting the judge to confirm that the defendant testified differently in the first trial. The judge's testimony followed portions of the transcript of the first trial and included an in-court identification of the defendant. During the testimony the State and defense repeatedly referred to the judge-witness as "judge" and "Your Honor." At the time of *Willis,* Illinois had adopted the "special witness doctrine." The special witness doctrine in Illinois applied to prosecutors, judges, in certain circumstances defense attorneys and news reporters, and required the trial court to hold a hearing to determine whether it would allow the witness to testify.

The Illinois special witness doctrine required:

At that [special witness] hearing, the party calling the witness must show that the testimony it seeks to introduce is "material and favorable" to its case. The party calling the witness must (1) state the testimony expected from the witness; (2) explain why the testimony is relevant and necessary to the party's case; and (3) de-

scribe the efforts made to obtain the same evidence from alternate sources.

*Willis*, 811 N.E.2d at 215, 284 Ill.Dec. at 920.

The Illinois court reviewed the issue under an abuse of discretion standard and ultimately determined that the trial court erred in allowing the judge to testify, and, therefore, reversed the conviction.

Finally, we note that Justice Franklin Cleckley addresses the issue of judicial testimony in Franklin L. Cleckley, *Handbook on Evidence for West Virginia Lawyers*, Vol. 1, Sec. 6–5, Fourth Addition (2000):

> A witness is not disqualified merely because s/he is an active judicial officer. Judges should be called as witnesses with caution [and] ... judges are not per se disqualified. In cases where a judge is called, it would be appropriate to give a cautionary instruction advising the jury that a judge's testimony is not entitled to greater weight merely because s/he is a judge.

In considering the issue of judicial testimony we find the foregoing cases and the writing of Justice Cleckley to be persuasive and valuable for guiding our trial courts when confronted with judicial testimony.

 Accordingly, we hold that judges are not *per se* disqualified from being called as witnesses, but should be called as witnesses with caution. We further hold that a judge who is requested to testify as a witness shall discourage the party from requiring him or her to testify; however, the judge may testify when properly summoned upon approval of the trial court and with such limitations as may be imposed by the trial court. We also hold that in the event a party persists in its effort to require the judge to testify, the trial judge shall conduct a hearing and apply the balancing test in Rule 403 of the *West Virginia Rules of Evidence*. At the hearing, the party calling the witness must: (a) state the testimony expected from the judge; (b) explain why the judge's testimony is relevant and necessary to the party's case; and (c) describe the efforts made to obtain the same evidence from alternate sources. The party seeking the judge's testimony must show that the testimony it seeks to introduce is material and favorable to its case, that the testimony is the only possible source of testimony on the relevant information, and, if the case is being tried before a jury, that the testimony is highly pertinent to the jury's task. If the judge is called to be a character witness or to give opinion evidence before a jury, the trial judge shall limit the judge's testimony to a minimum required to assure compliance with Rule 701 of the *West Virginia Rules of Evidence*.

 We further hold that when a judge testifies as a witness, the examining attorney, the testifying judge, and the trial judge shall not refer to the fact that the judge-witness is a "judge" except when the judge's testimony relates to the exercise of the judge's judicial function, the examining attorney, the testifying judge, and the trial judge may refer to the judge by his or her title only to the extent necessary to identify the judge at the beginning of his or her testimony. Finally, we hold that when a judge testifies as a witness before a jury and the testifying judge's title is expected to be known by members of the jury or is disclosed to the jury, the trial judge shall, both before the judge testifies, and again before the case is submitted to the jury, give a cautionary instruction advising the jury that a judge's testimony is not entitled to greater weight merely because the witness is a judge.

## IV.

### *Conclusion*

Based on the forgoing, the circuit court is affirmed in denying the appellant's petition for a writ of habeas corpus for failure of the appellant to state a claim cognizable in a habeas corpus action in that the judge's testimony was not so prejudicial so as to constitute the denial of due process. We do find, however, that there is a potential for abuse through the use of judicial testimony, and accordingly hold that our trial courts should apply the guiding principles set forth in this opinion.

Affirmed.