# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Charles J. Lively,**
**Petitioner Below, Petitioner**

**FILED**

May 15, 2015

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 14-0483** (McDowell County 11-C-110)

**David Ballard, Warden,**
**Mount Olive Correctional Complex,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Charles J. Lively, by counsel Rico Moore and Scott Driver, appeals the April 15, 2014, order of the Circuit Court of McDowell County denying his petition for habeas relief stemming from his conviction and sentence for first degree murder and arson. Respondent David Ballard, Warden, by counsel Christopher S. Dodrill, filed his response to which petitioner submitted a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On October 18, 2005, a McDowell County grand jury returned an indictment charging petitioner and a codefendant, Tommy Owens, in the criminal matter jointly with one count of first degree murder, one count of first degree arson, and one count of conspiracy to commit murder and arson, stemming from the death of Dr. Ebb K. Whitley Jr. at his home in Iaeger, West Virginia, on March 15, 2005.[1] Petitioner and Mr. Owens were tried separately, and each was granted a change of venue without objection.[2] Petitioner's trial was held in the Circuit Court of Putnam County in November of 2006. Mr. Owens was acquitted of all charges while petitioner was convicted of first degree murder, with a recommendation of mercy, and first

---

[1] The indictment also charged petitioner with one count of burglary and one count of grand larceny stemming from a separate incident. However, those two charges were eventually disposed of by petitioner's plea of guilty to one count of petit larceny. Petitioner did not file a direct appeal related to that plea.

[2] Both petitioner's trial and Mr. Owens' trial were presided over by the same judge from the Circuit Court of McDowell County.

1

degree arson. By order entered July 31, 2007, petitioner was sentenced to a term of life imprisonment with the possibility of parole for the first degree murder conviction and a term of one year of imprisonment for the petit larceny conviction.[3]

On August 11, 2008, the Circuit Court of McDowell County entered an order resentencing petitioner to life with the possibility of parole, with no additional sentence imposed by the trial court for the arson conviction. Petitioner appealed his conviction and sentence to this Court. *See State v. Lively*, 226 W.Va. 81, 697 S.E.2d 117 (2010). This Court affirmed the circuit court's decision.

Petitioner filed a petition for habeas relief before the circuit court on June 8, 2011, asserting four claims for relief: (1) ineffective assistance of counsel; (2) violation of due process based on actions by the circuit clerk by allegedly contacting witness Brian Salyers; (3) violation of due process because the circuit judge did not recuse himself from the criminal trial; and (4) violation of due process based on actions of the prosecuting attorney. Based on a motion by petitioner, Judge Stephens recused himself from the habeas proceedings and Judge Cummings was appointed in his place. On February 20, 2013, the circuit court held an evidentiary hearing on that petition, during which petitioner was present and represented by counsel. The circuit court entered its "Findings of Fact and Conclusions of Law" on April 15, 2014, finding that trial and appellate counsel were reasonably effective; Michael Brooks' attempts to contact witness Mr. Salyers did not violate petitioner's due process rights; Judge Stephens's trial of petitioner did not violate due process; the prosecuting attorney did not suborn or intimidate a witness and he disclosed all potential exculpatory evidence; and a third arson report that the prosecutor obtained after the trial was not "newly discovered evidence" that would justify a new trial. The circuit court found that petitioner failed to demonstrate that his rights had been violated, so it denied the petition and dismissed the matter from the docket. Petitioner appeals from that order.

We apply the following standard of review in habeas cases:

> In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review.

Syl. Pt. 1, *Mathena v. Haines,* 219 W.Va. 417, 633 S.E.2d 771 (2006). Further, "'[a] habeas corpus proceeding is not a substitute for a writ of error in that ordinary trial error not involving constitutional violations will not be reviewed.' Syllabus Point 4 of *State ex rel. McMannis v. Mohn,* 163 W.Va. 129, 254 S.E.2d 805 (1979) [c]ert. [d]enied, 464 U.S. 831, 104 S.Ct. 110, 78 L.Ed.2d 112 (1983)." Syl. Pt. 3, *Hatcher v. McBride,* 221 W.Va. 5, 650 S.E.2d 104 (2006).

On appeal, petitioner asserts five assignments of error. His first and fourth assignments of error are substantially related, so we will address the two jointly. First, he asserts that the circuit court erred in not ruling that he was deprived of due process of law by the unethical,

---

[3] The conspiracy charge was dismissed.

partisan actions of the acting Circuit Clerk of McDowell County, Michael Brooks, in attempting to intimidate and interrogate a material witness. Prior to trial, prosecuting attorney, Sidney Bell, and Mr. Brooks, engaged in ex parte communications with one another regarding the particulars of petitioner's case. At that time, Mr. Brooks became privy to the fact that potential witness Brian Salyers had recanted a previous inculpatory statement. Mr. Bell told Mr. Brooks that he was having trouble trying to reach Mr. Salyers, and Mr. Brooks said that he would try to speak with Mr. Salyers. Mr. Brooks then tried to call Mr. Salyers, but was unable to reach him. However, Mr. Brooks spoke with Mr. Salyers' girlfriend, Courtney Prater, and questioned her about Mr. Salyers' recantation of his statement. Mr. Brooks also reportedly admonished Ms. Prater, stating that Mr. Salyers' recantation could cause problems for Mr. Salyers and his family. Petitioner argues that the communications between the various people was misconduct that constitutes defiant impropriety.

Petitioner's fourth assignment of error is that the circuit court erred in not ruling that petitioner was deprived of due process of law by the misconduct of the prosecuting attorney in deliberately suborning the intimidation of a material witness and in disregarding his affirmative duty to disclose potentially exculpatory information to defense counsel. Petitioner argues that Mr. Brooks communicated thinly veiled warnings to Ms. Prater and interrogated her regarding the case. He contends that defense counsel failed to request the purported confidential informant's name, failed to object to related testimony, and failed to address the issue in any way even after petitioner's conviction. However, he argues that counsel's deficiencies failed to inoculate Mr. Bell against his own obligations. Petitioner asserts that combined with the circuit clerk's misconduct, Mr. Bell's prosecutorial misconduct constitutes a denial of due process.

During the evidentiary hearing in this matter, Mr. Brooks conceded that he had a pretrial conversation with Mr. Bell and that he offered to try to contact Mr. Salyers since he knew Mr. Salyers's family. He testified that he offered to do so not as the circuit clerk but in his individual capacity. Petitioner knew of these communication issues prior to the criminal trial in this matter. He admits that he raised the issue before the trial court and that the court advised Mr. Bell not to allow the same to occur again. Therefore, it is clear that petitioner could have raised this issue in his criminal appeal but failed to do so, despite raising other issues related to Mr. Salyers. While petitioner contends that the issue rises to the level of a constitutional issue, we do not agree. As set forth above, a habeas corpus proceeding is not a substitute for a writ of error, and only errors involving constitutional violations will be reviewed. Syl. Pt. 3, *id.* Therefore, we decline to address the portions of the first and fourth assignments of error related to the communication issues and any alleged prosecutorial misconduct related to the same.

With regard to petitioner's contention that the State failed to disclose exculpatory information, namely the name of the alleged confidential informant, we have previously held the following:

> There are three components of a constitutional due process violation under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and *State v. Hatfield,* 169 W.Va. 191, 286 S.E.2d 402 (1982): (1) the evidence at issue must be favorable to the defendant as exculpatory or impeachment evidence; (2) the evidence must have been suppressed by the State, either willfully or inadvertently;

3

and (3) the evidence must have been material, i.e., it must have prejudiced the defense at trial.

Syl. Pt. 2, *State v. Youngblood,* 221 W.Va. 20, 650 S.E.2d 119 (2007). Petitioner fails to show or even allege that the name of the informant or the informant's possible testimony would have been favorable to petitioner as exculpatory or impeachment evidence. Because he has not satisfied the first prong of this test, we need not consider the other prongs. Therefore, we find that the habeas court did not err in denying petitioner's requested relief on these grounds.

Petitioner's second assignment of error is that the circuit court erred in not ruling that petitioner was deprived of due process of law by the failure of the trial court judge to recuse himself despite his own political and personal affiliation with the alleged victim. According to petitioner, Dr. Whitley, the victim, was well-known in the community, which necessitated a change of venue. However, he asserts that Dr. Whitley was also well-known to the trial judge, and was a long-time figure in McDowell County politics. Petitioner contends that Dr. Whitley was a regular campaign contributor and political advocate on behalf of the trial judge. The trial judge testified at the evidentiary hearing and admitted that he did not disclose his relationship with Dr. Whitley on the record. Citing *Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868 (2009), petitioner argues that the trial judge's failure to voluntarily recuse himself, along with his failure to disclose his relationship with Dr. Whitley on the record, establishes an impermissible appearance of possible impropriety and bias petitioner contends that these failures are also improper, with or without actual bias.[4]

The facts in *Caperton* are easily distinguishable from those in the instant case. The issue in *Caperton* related to an alleged relationship with a litigant, while the issue before this Court is the alleged relationship between a trial judge and a deceased victim in a criminal matter. *Id.* Unlike in *Caperton*, if the trial judge in the instant case received campaign contributions from Dr. Whitley, there could be no allegation that Dr. Whitley could gain any advantage from favorable rulings from the trial judge in the proceeding below. It should also be noted that petitioner's codefendant, Mr. Owens, was tried and acquitted in a separate trial presided over by the same trial judge. Further, petitioner ignores the fact that the trial judge testified during the habeas proceeding that he "had as much respect for [Dr.] Whitley and Kathy Lively as anyone could have, and they both respected [him]." Kathy Lively is petitioner's mother who was a long-time employee of Dr. Whitley. Petitioner's argument is based, in part, on Dr. Whitley's prominence in the community and in the Democratic party in McDowell County, so it is difficult to reconcile that argument with his complaint that any relationship between the trial judge and the victim was not disclosed "on the record." If petitioner suspected that there was any bias or impropriety, he could have made a motion for the recusal of the trial court judge. However, he failed to do so until after he had been convicted by a jury of his peers. Petitioner has failed to identify any evidence of actual prejudice or bias on the part of the trial judge's decision to serve as the trial judge, instead making speculative arguments. While petitioner need not present proof

---

[4] Petitioner further asserts that the trial judge's bias was reflected in his rulings related to Mr. Brooks and Mr. Bell. However, that issue was addressed in the first and fourth assignments of error.

of actual bias, the question is "whether, 'under a realistic appraisal of psychological tendencies and human weakness,' the interest 'poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented." *Id.* at 870 (quoting *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). Based on the record before this Court in the matter, we find that the trial judge in the instant case did not err in failing to voluntarily recuse himself in the underlying criminal matter.

Petitioner's third assignment of error is that the circuit court erred in not ruling that petitioner was deprived of due process of law by the ineffective assistance of counsel at both the trial and appellate levels. He argues that it is evident from the record and subsequent investigation that trial counsel, Floyd Anderson, did not sufficiently investigate the particulars of petitioner's case or possible defenses. Petitioner points to a letter he wrote to the circuit court on November 28, 2005, claiming that his and his family's communication with Mr. Anderson had been stymied and that their suggestions regarding the investigation had been ignored.[5] He also argues that there is a substantial possibility that, given the benefit of a full investigation and informed inquiry, defense counsel may have procured a different result in the instant case, including a better plea offer, a pretrial suppression, or even a dismissal.[6] Petitioner contends that Mr. Anderson's pre- and post-trial motions practice was deficient, including failing to timely file a motion for reduction of his bond. He further points to Mr. Anderson's failure to file any motions raising potential issues of judicial recusal or prosecutorial misconduct, despite having knowledge of those issues.

Petitioner argues that the record is also devoid of any evidence that Mr. Anderson attempted to secure an expert to independently examine the State's evidence or rebut any of the claims made by the State's expert arson witness. He points to Mr. Owens's testimony at the evidentiary hearing that if he had been contacted by the investigator employed by Mr. Anderson, he would have testified on petitioner's behalf. Petitioner asserts that his trial counsel failed to raise obvious objections or develop a record upon which this Court could make an informed decision in the direct criminal appeal, so trial counsel's performance crippled any chance of prevailing on direct appeal.

With regard to his appellate counsel, petitioner argues that the attorney who prepared his appeal petition failed to raise certain issues that his subsequent appellate counsel addressed in the appellate brief and during oral argument. He, therefore, contends that if his original appellate counsel had raised those issues in the petition, this Court would have had the benefit of additional argument, rather than employing a plain error analysis.

We have previously held that

---

[5] While petitioner references this letter in his argument, he failed to include a citation to the appendix for this document. Therefore, this Court has not reviewed the substance of this letter.

[6] While petitioner argues that he may have been able to obtain a "pretrial suppression" if represented by different trial counsel, it is unclear what evidence or testimony that may have been suppressed.

"[i]n the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Syllabus point 6, *State v. Miller,* 194 W.Va. 3, 459 S.E.2d 114 (1995).

Syl. Pt. 3, *Ballard v. Ferguson,* 232 W.Va. 196, 751 S.E.2d 716 (2013). In the instant matter, at the time of petitioner's trial, Mr. Anderson had practiced criminal law for approximately ten years and had been a chief public defender for seven years. In its order, the habeas court found that Mr. Anderson had adequate time to investigate and prepare for trial; employed an experienced investigator for this case; discussed his pretrial and trial decisions in advance with petitioner, including petitioner's decision to refuse a plea bargain and take the case to trial; filed and got responses to petitioner's discovery motion; filed a suppression motion; strenuously contested the State's arson evidence; made a tactical decision not to employ a third arson expert; strenuously argued that the victim had set the fire by dropping a lit cigarette; called defense witnesses during trial; made appropriate, tactical objections during trial; vigorously cross-examined opposing witnesses; and argued strongly on petitioner's behalf.

Petitioner's argument regarding a deficient investigation lacks specificity sufficient to allow us to evaluate this claim. However, we note that at the evidentiary hearing, Mr. Anderson testified that he hired an investigator who "investigated at least ten different people" and that, of those ten, Mr. Anderson personally spoke with six or seven, including speaking with Mr. Salyers several times. He also testified that he met petitioner in jail between five and fifteen times and spoke with him on the phone, as well. Based on the lack of specificity in petitioner's argument and the record before this Court, we cannot find that the circuit court erred in determining that petitioner did not carry his heavy burden of showing that he received ineffective assistance related to his counsel's investigation.

Without reference to the record, petitioner contends that he communicated to the circuit court his distress at counsel's failure to timely file a motion for reduction of bond. However, it is clear that this alleged error cannot satisfy the second prong of the *Strickland/Miller* test. With regard to his complaint that Mr. Anderson never raised any issue of prosecutorial misconduct, it appears from the record that he learned of the alleged misconduct shortly before trial and that he did address that issue with the trial court. Petitioner's argument that Mr. Anderson failed to hire an arson expert is not supported by the record. During the evidentiary hearing, Mr. Anderson testified that he called Raymond Griffith Jr. from Casto Investigations to dispute the State Fire Marshall's opinion as to the cause of the fire. Petitioner also misconstrues the testimony offered by a State arson expert by claiming that the expert offered medical opinion testimony. Based upon our review of the portion of the trial transcript referenced by petitioner, we do not find that to be true. Instead, the expert offered testimony related to the charring, or lack thereof, of the victim's body, which goes to the origin of the fire. Petitioner also alleges that his trial counsel was ineffective because he failed to speak with or call Mr. Owens as a witness at trial. However, during the evidentiary hearing, Mr. Anderson testified that based on his prior experience with Mr. Owens's counsel, Mr. Anderson knew that Mr. Owens's counsel would not let him speak to

Mr. Owens. Clearly, it is a reasonable strategic decision for an attorney to choose not to call a witness with no knowledge as to what that witness may say before a jury. Therefore, we find that the circuit court did not err in denying petitioner's requested habeas relief on these grounds.

As the final part of this assignment of error, petitioner alleges that he received ineffective assistance of counsel from his appellate counsel. In *Lively*, 226 W.Va. at 93-94, 697 S.E.2d at 129-30, we noted that appellate counsel failed to assign as error in the petition for appeal the State's failure to disclose allegedly exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83 (1963). In post-trial motions, counsel argued that the State failed to provide the name of a confidential informant. *Lively*, 226 W.Va. at 93-94, 697 S.E.2d at 129-30. However, we also noted that there had been no assertion by petitioner that anything in the informant's statement would, in any way, tend to exculpate petitioner. *Id.* While we deemed the argument waived, given that the argument was not asserted in the petition for appeal, petitioner has failed to show that the assertion of the same in the petition for appeal would satisfy the second prong of the *Strickland/Miller* test. Therefore, we find that the circuit court did not err in finding that petitioner did not receive ineffective assistance of counsel in his criminal proceeding or in his direct appeal.

Petitioner's final assignment of error is that the circuit court erred in failing to consider that the cumulative effect of each assigned error, when viewed as a whole, is sufficient to deprive petitioner of due process of law. While petitioner failed to explicitly raise cumulative error in his petition for writ of habeas corpus, his arguments in his "Memorandum in Support of Petition for Writ of Habeas Corpus," filed on the same date, touch on cumulative error. However, because we find no merit to petitioner's assignments of error, we find there is no cumulative error.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** May 15, 2015

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Allen H. Loughry II

**DISSENTING:**

Justice Menis E. Ketchum

7