# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 19-0144** (Mercer County 18-F-120-WS)

**Billy C.,**
**Defendant Below, Petitioner**

**FILED**
**May 26, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Billy C., by counsel Derrick W. Lefler, appeals the Circuit Court of Mercer County's January 16, 2019, order denying his motion for a new trial and sentencing him following his convictions for various sex crimes.[1] Respondent State of West Virginia, by counsel Shannon Frederick Kiser, filed a response. Petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On June 12, 2018, petitioner was indicted on thirteen counts of various sex crimes: three counts of first-degree sexual assault; three counts of first-degree sexual abuse; three counts of use of obscene matter with the intent to seduce a minor; two counts of sexual abuse by a parent, guardian, custodian, or person in position of trust to a child; and two counts of incest. These crimes were alleged to have been committed against A.P. on or about June 10, 2017; M.C. between 2005 and 2008; and D.C. between 1991 and 1995.

Several pretrial hearings were held. At a July 31, 2018, pretrial hearing, the State indicated that it was awaiting "digital evidence" and that it had been informed that analysis of that evidence

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *In re Jeffrey R.L.*, 190 W. Va. 24, 435 S.E.2d 162 (1993); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

could take three to six months.[2] Petitioner's trial was continued until later in the term. The parties appeared for another pretrial hearing on August 23, 2018, at which point the State had yet to receive a report on the digital evidence. On October 15, 2018, the parties again appeared, and petitioner's counsel informed the court that he had still not received information from the State regarding the digital evidence it analyzed. The State suggested that it could go to trial without the report, but stated that the analyst would testify "as to his efforts and what he found." The court declined to permit that testimony in the absence of a report, so the State agreed to contact the analyst and request a report.

Also at the October 15, 2018, pretrial hearing, petitioner argued a previously-filed motion to sever. Petitioner argued that the trial on the counts pertaining to D.C. should be severed from the trial on the remaining counts because the allegations supporting the counts pertaining to D.C. were remote in time and because D.C. is a male, whereas A.P. and M.C. are both females. Finding the difference in sexes to be immaterial and that all of the victims' testimony would come in at each trial as a common scheme or plan, the court denied the motion by order entered on October 23, 2018.

On October 25, 2018, the circuit court held a final pretrial conference. Petitioner informed the court that, no more than two weeks prior, he had received the extraction report from Dale Mosley, a digital forensic analyst for the West Virginia State Police, who analyzed petitioner's iPad. Petitioner requested a continuance to have the iPad analyzed by his own expert. Petitioner stated that he had not yet had the opportunity to speak with an expert because the State had retained the iPad since it was seized in "probably June of last year." The State, citing the length of time petitioner's case had been pending, opposed petitioner's motion to continue.

The court stated that it doubted

> what good an independent analysis would do, . . . I mean, you know, I don't—exactly sure what you're trying to establish with an independent analysis. . . . It's not like it's DNA or something like that affirm—that's gonna show pretty much evidence that your client did it.

Reasoning that it did not "see what [petitioner] would—what you could gain from it," the court denied petitioner's request to continue trial for an independent expert examination of the iPad.

Petitioner's jury trial began on October 30, 2018. West Virginia State Trooper Patrick Hephner testified that he began his investigation into petitioner following a report that petitioner had sexually assaulted A.P. Almost immediately after he began his investigation, members of petitioner's family called Trooper Hephner to state that A.P.'s assault "wasn't a one-time incident." Trooper Hephner was put in contact with two additional victims, M.C. and D.C., who were petitioner's granddaughter and grandson, respectively. Trooper Hephner also testified that, during his investigation, he recovered an iPad from petitioner's residence following A.P.'s assertion that petitioner had shown her pornography on the device.

---

[2] The record is unclear as to the exact date, but it appears that authorities searched petitioner's home in June or July of 2017 and seized, among other things, his iPad.

D.C. testified that, at approximately age six, he and his family moved next door to petitioner, and the family lived there between the years of 1991 and 1995. During that time, D.C. frequented his grandparents' home, particularly after returning from school. One day he found his grandfather sitting on the couch watching a video, and petitioner asked D.C. to join him. The video was of a man and woman engaged in sexual intercourse, and petitioner asked D.C. if he would like to act out that conduct. D.C. testified that between the years of 1991 and 1995, he participated with petitioner in acting out the pornography, which included D.C. masturbating petitioner, petitioner performing oral sex on D.C., and the two playing strip poker. D.C. testified that these activities occurred daily, except for when his grandmother was home.

M.C.'s testimony was similar to that of D.C. M.C. indicated that petitioner's abuse of her began when she was six or seven years old and included petitioner showing her pornography, performing oral sex on her, fondling her, and making her perform oral sex on him.

A.P., who was seven at the time of trial, testified that she touched petitioner's "private" when "[h]e told me to," and "[h]e touch[ed] my privates and was holding me down and pulling my pants down." A.P. also testified that petitioner performed oral sex on her and made her "watch nasty stuff with stuff coming out of there [sic] mouth. He told me that he was gonna put some in my mouth, too."[3]

Before the State's digital forensic analyst Mr. Mosley testified, petitioner conducted voir dire outside the presence of the jury. Mr. Mosley indicated that his report totaled nearly 1,000 pages, but he produced only the nineteen pages that he deemed important. The disclosed portion of the report detailed that, during the first half of 2017, petitioner visited Pornhub seven times and viewed 203 personal ads on Craigslist. Noting the incompleteness of Mr. Mosley's report and reiterating that he should have the opportunity to test the iPad, petitioner moved to exclude the report.

The circuit court asked the State for the purpose of the report, and the State responded that "the youngest victim . . . has stated that [petitioner] showed her pornography on his iPad. And, this verifies that there was pornography on his iPad." The court instructed the State, "I think that's all you need to get out. I don't think you need to get—mention the specific sites or any, you know, Craigslist or anything like that. Just the fact that the sites, that there was evidence that he had visited adult pornography sites." Petitioner continued, "And, Your Honor, I'm certainly troubled by the fact that we got this report, not even the whole report, less than three weeks before trial. The State's had this evidence since July of last year and it wasn't touched until this month."[4] The court reiterated its prior reasoning:

---

[3] The jury also heard from D.C.'s mother, in whom D.C. confided close in time to the abuse; M.C.'s mother, in whom M.C. confided close in time to the abuse; and A.P.'s grandmother and therapist, with whom A.P. discussed the abuse.

[4] The report listed a "[r]eport creation time" of 5:32 p.m. on October 11, 2018.

Well, I mean, it's not the type of evidence that's gonna have [ex]culpatory evidence that I can see. Unless they found no pornography. I mean, that's the only thing that could be [ex]culpatory as far as the [c]ourt's concerned. I mean, there's not gonna be anything on there that would show that he didn't do what he's charged with. I mean, it's beyond imagination that there's anything on that computer that would show that he didn't commit these crimes. . . . There's—I don't see any benefit that you could gain by any additional analysis of this information or obtaining this information any earlier than you did. It is what it is. Like I said, it's not the type of information that's gonna—that's gonna reveal additional evidence that would be [ex]culpatory to the [petitioner].

The court also repeated its instruction that the State

stay away from [Craigslist] ads. Like I said, I think we need to keep this as general as we can. Because, you know, I'm trying to balance the interest of both sides and because they haven't had an opportunity to do any additional investigation, I think we need to keep it as general as we can.

In testifying before the jury, Mr. Mosley indicated that petitioner's iPad web history contained pornographic websites. The State asked Mr. Mosley how many pornographic websites had been viewed, and he said "[a]pproximately—what I book marked was 210." Petitioner objected, arguing that "[t]here are seven references to a pornographic site and there are 203 to the Craigslist entries that we talked about that we weren't going to get into." The court told petitioner he could clarify on cross-examination.

After the State rested,[5] petitioner took the stand and denied the allegations levied against him by the victims. Petitioner suggested that the allegations were made as a result of a dispute involving a shared water pump and other property issues. During his cross-examination, petitioner denied looking at "a lot" of pornography on his iPad and stated that he was unaware of any pornography on the device. He said, "I don't even have a history of electronics at all. . . . We never did get that iPad going."

On November 1, 2018, the jury returned its verdict, finding petitioner guilty of all counts charged in the indictment. Petitioner moved for a new trial on November 13, 2018. In his motion, of relevance to the instant appeal, petitioner argued that the court erred in denying his motion to continue for the purposes of examining and testing the iPad, and that the court erred in admitting Mr. Mosley's testimony regarding that testing. Petitioner also argued that the State violated the

---

[5] Petitioner moved for a directed verdict of acquittal after the State rested, which the circuit court denied. Also, before the State rested, petitioner moved for a mistrial based on Mr. Mosley's testimony regarding the 210 items of pornography. Petitioner argued, "205 of those, he had absolutely no idea whether they had an image attached to them or not. . . . [I]t is still a huge number that I fear prejudices the [j]ury irretrievably." The court denied the motion, concluding that Mr. Mosley's inability to "tell what that was, whether it was images, videos, or anything else for that matter, I think tempers the prejudicial affect [sic] that it would have had."

scope of the court's ruling on the admissibility of the iPad evidence. Finally, petitioner argued that the court erred in denying his motion to sever.

The parties appeared for sentencing on January 7, 2019, during which the court addressed petitioner's motion for a new trial. With respect to the iPad, the court determined that it did

> not think [the iPad] was very incriminating at all towards the [petitioner]. . . . So, in the whole scheme of things, I don't know that a, first of all, what a defense investigation into the computer itself or testing of the computer would have revealed anything differently. In light of the fact that it was limited evidence that would incriminate [petitioner] none of the activity that was testified to was illegal in and of itself. There was nothing about the sites that supposedly was accessed by the iPad. . . . So, the [c]ourt finds to the extent that there was any error in the [c]ourt's ruling on those issues, that in the scheme of things, they were harmless.

The court echoed its prior finding that the different counts were sufficiently related to justify denial of petitioner's motion to sever, especially "because [the court] think[s] the evidence of these other crimes could have probably been introduced by the State as 404b . . . to show a lustful disposition towards children because of the young ages of all the victims in this matter." Accordingly, the court denied petitioner's motion for a new trial and sentenced petitioner to the statutorily prescribed terms of incarceration applicable to each conviction. The court entered its order denying petitioner's motion for a new trial and sentencing him on January 16, 2019, and this appeal followed.

> In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

Syl. Pt. 3, *State v. Vance*, 207 W. Va. 640, 535 S.E.2d 484 (2000).

Petitioner raises four assignments of error on appeal. First, petitioner argues that the circuit court erred in denying him the opportunity to conduct an independent examination of the iPad. Petitioner argues that Mr. Mosley's report was detrimental and prejudicial, and the circuit court's refusal to allow him to independently examine the device limited his ability to refute the State's evidence. Petitioner also claims that this evidence bolstered A.P.'s testimony and that the jury likely saw the evidence as corroborative of her testimony, even though Mr. Mosley could not specify the items viewed or displayed.

We have previously held that

> Rule 16(a)(1)(C) of the West Virginia Rules of Criminal Procedure requires that upon the request of the defendant the State shall permit the defendant to inspect tangible objects that are material to the preparation of the defendant's defense. The

right of inspection under this rule includes the right to have the defendant's own expert examine the tangible evidence that the State contends was used or possessed by the defendant at the time of the commission of the crime.

Syl. Pt. 7, *State v. Crabtree*, 198 W. Va. 620, 482 S.E.2d 605 (1996). When a defendant desires to analyze a tangible object under Rule 16, he or she

should file a motion setting forth the circumstances of the proposed analysis, the identity of the expert who will conduct such analysis, and the expert's qualifications and scientific background. The trial court may then, in its discretion, provide for appropriate safeguards, including, where necessary, the performance of such tests at the State laboratory under the supervision of the State's analyst.

*Id.* at 623, 482 S.E.2d at 608, syl. pt. 8, in part. We further stated, however, that although "a motion in compliance with the above prerequisites should be denied only in cases where the trial court is satisfied that the motion is not timely made or is in bad faith," "we do not recognize an absolute right to analyze evidence." *Id.* at 633, 482 S.E.2d at 618.

Here, petitioner did not move for independent testing until five days prior to trial. Additionally, his motion lacked the necessary information, including the circumstances of the proposed analysis and the expert's identity, qualifications, and scientific background. Although the State had petitioner's iPad for more than a year before trial and produced its expert's report only approximately two weeks before trial, petitioner was aware that the State was conducting its own examination by no later than the pretrial hearing held in July of 2018. Petitioner did not move to conduct his own examination at that time, pending completion of the State's examination, nor did he seek out an expert in the months that passed between that hearing and when he eventually made his motion, in October of 2018. Because petitioner's motion was untimely and failed to comply with the requirements set forth in *Crabtree*, we find no error in the court's refusal to allow petitioner the opportunity to independently examine the iPad.

Next, petitioner argues that the court erred in admitting Mr. Mosley's testimony. Petitioner notes that, of the 210 items Mr. Mosley identified in his report, he could only state that seven contained pornography, presumably by reference to the name of the website (Pornhub) given his inability to identify any images viewed on any of the sites visited. The substance of the Craigslist ads could not be viewed, and Mr. Mosley did not know whether the ads contained images. Nevertheless, after the court denied petitioner's motion to exclude Mr. Mosley's testimony, Mr. Mosley went on to testify that he bookmarked "210 different pornographic sites," which petitioner claims was an irrelevant, inflammatory, and inaccurate statement.

Under Rule 401 of the West Virginia Rules of Evidence, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." W. Va. R. Evid. 403.

Here, petitioner was charged with three counts of use of obscene matter with the intent to seduce a minor. Clearly, Mr. Mosley's testimony was directly relevant to those charges, and it was also relevant to the remaining charges where petitioner's abuse of the children, committed under markedly similar circumstances, involved showing pornography.

> "As to the balancing under Rule 403 [of the West Virginia Rules of Evidence], the trial court enjoys broad discretion. The Rule 403 balancing test is essentially a matter of trial conduct, and the trial court's discretion will not be overturned absent a showing of clear abuse." Syllabus Point 10, in part, of *State v. Derr*, 192 W.Va. 165, 451 S.E.2d 731 (1994).

Syl. Pt. 2, *Hatcher v. McBride*, 221 W. Va. 5, 650 S.E.2d 104 (2006). And "[o]nly rarely, in extraordinary circumstances, will we from a vista of a cold appellate record reverse a trial court's on-the-spot judgment concerning the relative weighing of probative value and unfair effect." *State v. Potter*, 197 W. Va. 734, 751, 478 S.E.2d 742, 759 (1996). Petitioner has failed to demonstrate a clear abuse of the circuit court's discretion in permitting Mr. Mosley's testimony, particularly where he effectively cross-examined Mr. Mosley on the perceived shortcomings of his analysis and the recovered information.

In petitioner's third assignment of error, he characterizes Mr. Mosley's testimony concerning the 210 pornography sites as improper character evidence prohibited under Rule 404(b) of the West Virginia Rules of Evidence. He claims that the evidence "paint[ed] him as a perverse character" and was not subject to the process for admitting character evidence set forth in *State v. McGinnis*, 193 W. Va. 147, 455 S.E.2d 516 (1994).[6]

Petitioner made no objection to Mr. Mosley's testimony on that ground in the circuit court. "One of the most familiar procedural rubrics in the administration of justice is the rule that the failure of a litigant to assert a right in the trial court likely will result in the imposition of a procedural bar to an appeal of that issue." *State v. LaRock*, 196 W. Va. 294, 316, 470 S.E.2d 613, 635 (1996) (internal quotations and citation omitted).

> When a litigant deems himself or herself aggrieved by what he or she considers to be an important occurrence in the course of a trial or an erroneous ruling by a trial court, he or she ordinarily must object then and there or forfeit any right to complain at a later time.

*Id.* The objection "must be timely made and must state the specific ground of the objection, if the specific ground is not apparent from the context." Syl. Pt. 1, in part, *State v. Blickenstaff*, 239 W. Va. 627, 804 S.E.2d 877 (2017) (citation omitted). Petitioner has not preserved this alleged error for review due to his failure to timely and specifically object on 404(b) grounds, assuming the evidence even falls within the Rule's ambit. *See id.* at 628, 804 S.E.2d at 877, syl. pt. 2 ("To

---

[6] In syllabus point 2 of *State v. McGinnis*, 193 W. Va. 147, 455 S.E.2d 516 (1994), we set forth the process the circuit court must undertake to determine the admissibility of evidence offered under Rule 404(b) of the West Virginia Rules of Evidence.

preserve an issue for appellate review, a party must articulate it with such sufficient distinctiveness to alert a circuit court to the nature of the claimed defect.") (citation omitted).

Finally, petitioner argues that the circuit court erred in denying his motion to sever the charges related to D.C., a male, who was abused between 1991 and 1995, from those pertaining to his more recent female victims. Petitioner claims that the State "was able to portray [a] scenario where [petitioner] was engaged in abuse over a span of [twenty-six] years across three . . . victims," thereby creating the impression that petitioner was a chronic abuser, even though the "various scenarios [bore] little connection or similarity."

Rule 14(a) of the West Virginia Rules of Criminal Procedure provides that "[i]f it appears that a defendant . . . is prejudiced by a joinder of offenses . . . for trial together, the court may order an election or separate trials of the counts or provide whatever other relief justice requires." The decision whether to grant separate trials of the offenses "rests in the sound discretion of the trial court." *State v. Ladd*, 210 W. Va. 413, 437, 557 S.E.2d 820, 844 (2001). Importantly, "[a] defendant is not entitled to relief from prejudicial joinder pursuant to Rule 14 of the West Virginia Rules of Criminal Procedures [sic] when evidence of each of the crimes charged would be admissible in a separate trial for the other." *Id.* at 422, 557 S.E.2d at 829, syl. pt. 26.

Had the court granted petitioner's motion to sever, evidence related to each of his victims would have been admissible at the separate trials due to the similarities in his abuse of each of them and because his conduct demonstrated a lustful disposition toward children. Therefore, the court did not err in denying his motion to sever. *See State v. Ryniawec*, No. 11-0341, 2012 WL 3030811, *3 (W. Va. June 22, 2012)(memorandum decision) ("The acts [against separate sets of sisters occurring approximately ten years apart] were similar in nature and each involved petitioner's lustful disposition toward children[; accordingly,] the trial court did not abuse its discretion in denying the severance.").

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** May 26, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

**NOT PARTICIPATING:**

Justice Margaret L. Workman

8